### UNITED STATES

v.

### Harold W. DANSER, Jr., and Ultrasonic Corporation.

### Crim. No. 59–105.

United States District Court
D. Massachusetts.

Dec. 1, 1959.

Joseph S. Mitchell, Jr., Asst. U. S. Atty., Boston, Mass., for U. S.

James D. St. Clair, Boston, Mass., for Harold W. Danser, Jr.

James P. Lynch, Jr., Boston, Mass., for Ultrasonic Corp.

WYZANSKI, District Judge.

Mr. Foreman and members of the jury, I have never before read a charge in a criminal case. I am going to do so in this case because I have found it necessary to think over each point very carefully in advance, and I am going to give you a copy of this charge when I have finished. Quite frankly, I do not believe that any one of you would remember all I said if I left the matter on an oral charge.

Mr. Foreman and Members of the Jury. This is a criminal prosecution of Harold W. Danser, Jr. for alleged violations of the Securities Act of 1933. In accordance with the usual practice I shall begin by stating some familiar principles applicable to all criminal prosecutions, then I shall turn to instructions more specifically applicable to this particular case.

Every defendant enters a criminal case with the benefit of the presumption of innocence. He is to be regarded by you as innocent unless he is proved guilty beyond a reasonable doubt. It is the burden of the Government to prove *every essential element* of any crime beyond a reasonable doubt. The phrase "beyond a reasonable doubt" means that you must be persuaded to a moral certainty that the Government has shown the guilt of the defendant. You must be persuaded as you would want to be persuaded about the most important events and concerns of your lives. A doubt is reasonable if it arises from the evidence or from the lack of evidence. But a doubt is not reasonable if it is merely capricious, arbitrary, or without any rational basis.

The indictment which is before you is nothing more than a charge or accusation. It is not evidence. It is a mere accusation which has never been fully tried until you were seated in the jury box.

The indictment before you named the defendants, Harold W. Danser, Jr. and Ultrasonic Corporation. You have nothing to do with Ultrasonic Corporation. You ought not to allow your consideration of the case against Danser to be affected in any way by the fact that Ultrasonic Corporation was originally named as a co-defendant and you ought not to speculate as to why that corporation is not involved in the present trial.

The indictment before you lists a total of 19 counts. I have directed acquittals of Danser upon 16 of these counts and have left for your consideration only Counts 3, 10, and 17. The fact that I have directed acquittals with respect to 16 counts has no bearing whatsoever upon your consideration of the three remaining counts. I have not meant to indicate by acquitting the defendant on 16 counts that I thought he was guilty with respect to the remaining three counts. Indeed, my reasons for directing an acquittal on the 16 counts have been in part to simplify the issues presented to you and to focus your attention upon a case which is within a manageable compass.

In considering the three counts which are before you you are instructed that each of them is to be considered by you separately as charging a separate crime. And in my instructions to you, as you will later observe, I have pointed out the separate issues which arise in

connection with each of these three different counts.

While there are important separate issues with respect to the three separate counts, there are some general statements which are applicable to all of the counts. Among the most important general statements is that in considering this case you are entirely to ignore the fact that the defendant himself did not take the stand. The defendant has the constitutional right not to take the stand. And you are legally bound not to draw any unfavorable inference from his failure to testify before you. It is the duty of the Government, as I have already told you, to prove its case beyond a reasonable doubt, and the defendant has the unqualified right to remain silent without having his silence used to fill in any gaps in the Government's offer of proof.

There is before you a mass of exhibits together with oral testimony given on four separate days. You are not to take into account any evidence except that which was offered in this courtroom. You are not to take into account any evidence which you are unable to understand after studying it and discussing it among yourselves. You are to rely upon your own impression of the credibility of witnesses, your own recollection of what they said, and your own appraisal of the value of the oral and the written testimony. You may be helped by statements in arguments of counsel as to their recollection of the facts and you may be helped by such statements as I make in this charge of my recollection of the facts, but you are not in any way bound by my recollection or by counsel's recollection of the facts. You are the judges of the facts in this case and comments which counsel or I make upon the facts you may freely ignore.

However, with respect to principles of law you are to follow my instructions. Needless to say, I may make errors in my instructions of law but, if I do make

such errors, they are to be corrected by appellate judges rather than by jurors.

I instruct you as a matter of law that in this case you may take into account in reaching your verdict circumstantial evidence. Circumstantial evidence is intrinsically no different from testimonial evidence. But whether you are considering circumstantial evidence or testimonial evidence, you are not to convict the defendant on any count which is before you unless you are persuaded beyond a reasonable doubt that the Government has proved each of the elements which I hereafter state to you is an essential element in connection with that particular count.

I am now coming more directly to the particular issues which arise in the instant case. I shall begin by quoting the statute. Then I shall describe to you each of the three counts which is before you for a verdict. Thereafter I shall take up each of the three counts in turn and shall state precisely what items the Government is required to prove in connection with each of these counts.

Out of an abundance of caution let me in the most emphatic terms state that I am not trying directly or indirectly to take from you your function of determining whether the defendant is guilty or not guilty in connection with any one of these counts. My form of statement has been designed with the intent of pointing clearly to the issues but has not been designed to express any personal opinion as to whether the defendant is guilty or not guilty. Needless to say since the only evidence offered in this case has been offered by the Government, it may be that my form of statement of the issues will seem more heavily to concentrate on the Government's side of the case. But you must not infer from this apparent lack of balance in my statement that I either endorse or reject the Government's view. And I remind you that the defendant is not under any duty to offer any evidence or to put before you or me his side of the case. He has

every right to stand mute and merely to rely upon the principle that it is the Government that must prove its side of the case.

Now I shall turn as I promised to the statute and the charges in the indictment before you.

Section 17(a) of the Securities Act provides that "It shall be unlawful for any person in the sale of any securities * * * by the use of the mails, directly or indirectly—(1) to employ any device, scheme, or artifice to defraud." And Section 24 of the same act provides that it shall constitute a crime if "any person willfully violates" the aforesaid Section 17(a) (1).

As a matter of law, I instruct you that each of the 3 counts which is before you, that is, counts 3, 10, and 17, charges violations of the aforesaid Section 17(a) (1) and Section 24. If the counts purport to charge violations of other parts of the Securities Act you are to ignore such other parts. As a matter of law, I direct you to interpret the three counts as being limited in the following manner. That is you are to treat as surplusage everything in counts 3, 10, and 17 which is not included in the following description of those counts.

Count 3 charges that prior to April 1, 1954 and continuing until about December 31, 1954 Harold W. Danser, Jr. in the District of Massachusetts willfully and unlawfully in the offer and sale of securities, namely, the *common stock* of Ultrasonic Corporation, by the use of the mails, did employ a scheme to defraud in the following manner. On or about June 28, 1954, and thereafter by amendments on July 16 and July 21, 1954, he caused to be filed with the United States Securities and Exchange Commission a registration statement including prospectuses, which *contained false and misleading financial statements*. For the purpose of defrauding investors Danser caused to be furnished to investors as a part of prospectuses of Ultrasonic Corporation untrue statements of material

facts which the defendant *knew well* would be false and untrue when made, including the following:

(a) That the costs other than selling, general and administrative expense for the six months ended March 31, 1954 were $1,803,564, when in truth and fact such costs were substantially greater.

(b) That the net income for the six months ended March 31, 1954 was $49,715, when in truth and fact the operations of the Ultrasonic Corporation during this six months' period resulted in a substantial net loss.

(c) That the amount to be amortized as moving expenses as at March 31, 1954 amounted to $114,975, when in truth and fact the amount aforesaid was substantially less.

About the twenty-ninth day of July 1954, Danser willfully caused to be delivered by the United States mail an envelope containing a confirmation of the purchase from Clayton Securities of 100 shares of common stock of Ultrasonic Corporation addressed to Joseph Goldman, 520 Beacon St., Boston, Massachusetts.

Count 10 charges that prior to April 1, 1954 and continuing until about December 31, 1954 Harold W. Danser, Jr. in the District of Massachusetts willfully and unlawfully in the offer and sale of securities, namely, the *common stock* of Ultrasonic Corporation by the use of the mails did employ a scheme to defraud in the following manner. On or about June 28, 1954, and thereafter by amendments on July 16 and July 21, 1954, he caused to be filed with the United States Securities and Exchange Commission a registration statement including prospectuses which *omitted to state material facts* which were necessary in order to make the registration statement not misleading. He omitted to state the amount of the *operating losses* of Ultrasonic Corporation *for the period subsequent to March 31, 1954*, the disclosure of which,

in the light of the circumstances, as he *well knew*, was necessary to make the said prospectus and information which was furnished to investors not misleading. On or about the twenty-third day of July 1954 Danser willfully caused to be delivered by the United States mail an envelope containing a prospectus of the Ultrasonic Corporation, dated July 21, 1954 addressed to Clayton Securities Corporation, 79 Milk Street, Boston, Mass.

Count 17 charges that prior to April 1, 1954 and continuing until about December 31, 1954 Harold W. Danser, Jr. in the District of Massachusetts willfully and unlawfully in the offer and sale of securities, namely the common stock *purchase warrants* of Ultrasonic Corporation by the use of the mails did employ a scheme to defraud in the following manner. Danser concealed and *omitted to state the amount of the operating losses* of Ultrasonic Corporation for the period subsequent to March 31, 1954, the disclosure of which, in the light of the circumstances, as the defendant *well knew*, was necessary to make information which was furnished to investors not misleading. About the fourth day of November, 1954 Danser willfully caused to be placed in the United States mails at Boston, Massachusetts an envelope containing a certificate Number NW–570, evidencing a common stock purchase warrant covering 50 shares of common stock of Ultrasonic Corporation made out to Merryle B. Solomon, addressed to Merryle B. Solomon and Mrs. Florence H. Solomon, 901 N. Patrick Drive, Arlington, Virginia.

In order to secure a conviction on Count 3 the Government must prove beyond a reasonable doubt every one of the following six items—

1. Danser, as President of Ultrasonic Corporation, was engaged in the sale of the common stock of that company to a group of underwriters.

2. Danser intended that this sale would cause the underwriters and others to make to ultimate investors further sales.

3. As a means of executing Danser's intention, a broker sold Ultrasonic stock to Dr. Goldman in July 1954 and confirmed that sale by a confirmation slip sent through the mails.

4. When making the sale of the common stock of Ultrasonic Corporation, Danser signed the registration statement which is Exhibit 2 and which includes the prospectus Exhibit 2A.

5. One or more of the following three statements in the prospectus *both* (a) was false and (b) was a material inducement to investors to purchase Ultrasonic Corporation common stock:

(1) That the "costs other than selling, general and administrative expenses for the six months ended March 31, 1954 were $1,803,564" and in computing so much of that figure as covered the Monitor Division the calculation was made as stated on page 19 of the prospectus "at percentages of selling prices determined on the basis of past experience."

(2) That the net income for the six months ended March 31, 1954 was $49,715.

(3) That the amount to be amortized as moving expenses as at March 31, 1954 amounted to $114,975.

6. Danser *knew* that one or more of the three statements just cited was false and he intended by the use of that false statement to defraud underwriters, or ultimate investors, or both.

It is unnecessary for this Court to give any further instructions with respect to the first of the foregoing matters. The jury can readily decide if it is persuaded beyond a reasonable doubt that Danser was involved in the sale of common stock of Ultrasonic, that he intended such a

sale to cause further sales to investors, that as a means of executing Danser's intention the mails were used to confirm the sale of stock to Dr. Goldman, and that Danser signed the registration statement. But it is desirable for the Court to give more detailed instructions about items 5 and 6.

■ With respect to item 5 you are specifically instructed that you are to consider only the 3 statements which are listed under item 5. But you are to consider each of the 3 statements separately. The Government need not prove that all three were false and material. It is sufficient if the Government proves that any one of them was *both* false and material. But the Government must prove that at least one statement was not merely false but also material. A statement is false if it is untrue. A statement is material if it is the sort which would induce an investor to purchase stock of Ultrasonic Corporation.

If you find that so much of the $1,803,564 figure as represents the Monitor division was not based upon "percentage of selling prices determined on the basis of past experience", but was an artificial figure in part derived from applying to 1954 Monitor sales a percentage figure representing the experience of some prior period and in part derived from adjustments having no proper relation either to 1954 costs or to cost experience in some prior period then you may find that the $1,803,564 figure is false. And if you find that it is a statement which would affect purchases by investors you may find that it is a material statement.

■ If you find that *no* proper accounting method would have shown that Ultrasonic Corporation had a profit for the six months ending March 31, 1954, you may find that the statement of net income of $49,715 was false. And if you find that it is a statement which would affect purchases by investors you may find that it is a material statement.

If you find that the $114,975 figure for moving expenses is unsupported either by underlying figures or by a reasonable estimate then you may find that figure is false. And if you find that it is a figure which would affect purchases by investors you may find that it is a material statement.

■ With respect to item 6 you are specifically instructed that if the Government has borne the burden of proving beyond a reasonable doubt that at least one of the three statements under item 5 was both false and material, then the Government has the further burden of proving beyond a reasonable doubt that Danser at the time he signed the registration statement personally knew that that statement was false and intended to defraud underwriters, investors, or both. Danser is not to be assumed to know everything that is shown by the books of Ultrasonic Corporation. The fact that Danser was president of the corporation does not support any presumption that he knew the contents of the corporation's records. The Government must show that Danser actually knew that the particular statement in question was false. This does not mean that the Government has to offer the testimony of some witness who told Danser that the particular statement was false, or to offer the testimony of some witness who heard Danser say that the particular statement was false. The Government may rely upon circumstantial evidence. That is, the Government has a right to present evidence on topics such as how the executives of the company reported to Danser, what types of oral and written reports were made to Danser, what interest Danser took in financial details, and what significance particular matters had in connection with Danser's role in the enterprise as a whole. You as jurors may consider these circumstances, and it is up to you to decide whether from them you derive that abiding assurance which enables you to say that you are persuaded beyond a reasonable doubt that Danser had personal knowledge of a particular

statement, if any there be, which you regard as false and material.

In considering whether Danser knew that any statement in the prospectus was false and whether Danser intended to use that statement to defraud, defendant's counsel has argued that Danser acted upon the basis of the expert accounting advice of the well-known accounting firm of Lybrand, Ross Bros. and Montgomery and with the advice of Mr. Mulford a partner in the Philadelphia law firm of Drinker, Biddle, and Reath.

■ I instruct you as a matter of law that if before a person makes technical financial statement such as the three statements in issue under count 3, (a) he in good faith selects a competent accountant or lawyer, and (b) he places all the relevant facts known to him before that competent expert, and (c) he receives from that expert an opinion as to how those facts may fairly be stated, and (d) he believes that expert opinion was rendered in good faith and (e) in reasonable reliance upon that expert opinion he uses a form of statement which corresponds with the expert opinion, you cannot find that the person who so relied had knowledge that the statement was false or intended to defraud. In short, if a statement is of a technical nature, a layman who in good faith has secured a technician's approval of that statement has a right to say he believed the statement to be true because he had justified faith in the technician's knowledge of the facts and the technician's competence to pass upon the form in which they were presented.

■ Although I have instructed you that as a matter of law a layman acting in good faith may rely absolutely upon a competent technician under some conditions, I have not instructed you whether in the present case Danser met all the conditions. That is a question of fact for you. Perhaps the Government agrees with defendant's counsel that Lybrand was a competent accounting firm and that Danser gave to Lybrand all of Ultrasonic's books. But the Government suggests that Lybrand never expressed *unqualified* approval of the statements made in the prospectus as to the costs, the moving expenses, and the net income for the six months ending March 31, 1954. As to this suggestion I express no opinion whatsoever. I do, however, urge you carefully to read in the jury room the form of Lybrand's certificate on page 15 of the prospectus Exhibit 2A and the so-called comfort letter, Exhibit B. It is up to you to decide whether Lybrand expressed approval of the challenged statements, and if so whether Danser in good faith relied upon that approval. In this connection I remind you that it is not the burden of Danser to show that his statements are innocent. It is the burden of the prosecution to prove beyond a reasonable doubt that when he signed the registration statement Danser knew that he was making a false statement and intended to defraud.

I turn now from Count 3 to Count 10. In order to secure a conviction on Count 10 the Government must prove beyond a reasonable doubt the following five items—

1. Danser, as President of Ultrasonic Corporation, was engaged in July 1954 in the sale of the common stock of that company to a group of underwriters, including Clayton Securities Corporation.

2. In connection with this sale and foreseeable sales by the underwriters to investors Danser directly or indirectly caused copies of the prospectus Ex. 2A to be delivered by mail to Clayton Securities Corporation about July 23, 1954.

3. The prospectus showed that for the six months through March 31, 1954 Ultrasonic Corporation had a profit but did not show any figures for the period between April 1 and July 1, 1954.

4. Ultrasonic Corporation sustained such considerable losses be-

tween April 1 and July 1, 1954 that omission of any reference to losses in those three months made the prospectus materially misleading in July, 1954.

5. *At the time he caused the prospectus to be delivered by mail,* (if he did so cause it) Danser both knew of these omissions and intended to defraud either the underwriters or investors or both groups.

■■■ In connection with this count the jury will observe that they are not to consider any question as to any *affirmative misstatements* in the prospectus (if any there were). The jurors are to consider whether there were *omissions from the prospectus.* The problem is whether there occurred in the third quarter of the company's fiscal year (April, May, and June 1954) grave losses which materially affected prospective purchasers of Ultrasonic stock, whether Danser knew of such losses, whether his knowledge (if he had any) antedated his action (if any) in causing prospectuses to be sent to Clayton Securities Corporation, and whether (if there were material losses and if Danser knew of them) Danser's omission to disclose those losses was motivated by an intent to cheat, deceive, or defraud underwriters or investors or both. To secure a conviction under Count 10 the Government must prove beyond a reasonable doubt not merely that there was an omission, that the omission was material, and that Danser knew of the omission, but also that Danser intended to defraud.

This Court in no way intimates any view as to whether the Government has proved the five items essential for a conviction on Count 10. But the Court reminds the jury that if there were extraordinary losses in the third quarter and if Danser knew of them but concealed them, there is no evidence that in concealing them he relied upon professional opinion given to him by technical accounting or legal experts.

I turn now to Count 17. This count deals with *warrants* not with common stock. As I have limited the count, it deals with *alleged omissions* not with alleged affirmative misstatements. In order to secure a conviction on count 17 the Government must prove beyond a reasonable doubt each of the following five items—

1. Danser, as President of Ultrasonic Corporation, was offering new warrants, (exercisable until January 1, 1957, to purchase Ultrasonic Corporation common stock) to holders of old warrants (exercisable until January 1, 1955), upon the basis of the exchange of an old warrant plus 75 cents for a new warrant.

2. In connection with this exchange Danser directly or indirectly caused the mailing to Merryle B. Solomon of Ex. 37b a letter dated October 1, 1954.

3. About November 4, 1954 Danser directly or indirectly caused the mailing to Merryle B. Solomon of Ex. 40a a certificate for new warrants of Ultrasonic Corporation.

4. Before October 1, 1954 Ultrasonic Corporation had sustained such grave losses that omission of any reference to those losses in communications to Mr. Solomon made the offer to him of an exchange of his old warrants for new warrants plus 75 cents for each new warrant materially misleading.

5. Before Danser caused Ex. 37b, the letter of October 1, 1954, to be mailed (if he did so cause it) Danser both knew that Ultrasonic Corporation had sustained grave losses, and omitted to state those losses because he intended to defraud warrant holders such as Mr. Solomon.

As is indicated by the listing of the five foregoing essential elements of Count 17, this Count 17 is *not* directed at the situation in July 1954 when the registration statement Ex. 2 was filed and the prospectus Ex. 2A was prepared.

Moreover, this Count 17 refers to a time when, so far as appears from the evidence, Lybrand, Ross Bros. & Montgomery were *not* acting as auditors or accountants for Ultrasonic Corporation.

Count 17 is directed to a situation in the fall of 1954. And the charge which the Government seeks to prove is that by the end of September 1954 Danser knew that Ultrasonic Corporation was sustaining substantial losses which would be of material concern to a person who might acquire new warrants in exchange for old warrants, that at a time when Danser knew of those losses he caused the letter of October 1, 1954 Ex. 37b to be sent to Mr. Solomon, and that in omitting to disclose those losses Danser acted with fraudulent intent. If you are persuaded beyond a reasonable doubt that Danser about October 1, 1954 caused the sending of Ex. 37b, that as of that date there were substantial losses which would materially affect the willingness of a holder of an old warrant to spend an additional 75 cents to acquire a new warrant, that Danser knew of the losses when he caused (if he did cause) the sending of Ex. 37b, and that Danser intended to defraud warrant holders who were being solicited to make the exchange, then the Government has proved its case.

It seems to me appropriate and fair to point out to you one further matter with respect to Count 17. In connection with this Count 17 (unlike Counts 3 and 10) the Government has the benefit of Danser's own admission before the grand jury that he saw in September 1954 Ultrasonic's profit and loss statement for the 11 months ending August 31, 1954 which revealed a cumulative loss of $230,927. *By itself* that admission is *not* enough to prove defendant guilty as charged in Count 17. The Government must prove beyond a reasonable doubt all five items I have listed before you can convict Danser on Count 17.

Moreover, as I have already indicated, it is only in connection with Count 17 which relates to the fall of 1954 that Danser admits that he had knowledge of losses. He does not admit that he knew of losses in July 1954 which is the critical period with respect to Counts 3 and 10.