563 P.2d 363 (1976)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
William M. TERRANOVA, Defendant-Appellant.
No. 75-790.
Colorado Court of Appeals, Div. I.
December 30, 1976.
As Modified On Denial of Rehearings February 24, 1977.
*364 J. D. MacFarlane, Atty. Gen., Edward G. Donovan, Sol. Gen., Thomas P. Casey, Chief Appellate Deputy Dist. Atty., Lucy Marsh Yee, Deputy Dist. Atty., Denver, for plaintiff-appellee.
David A. Sorenson, Denver, for defendant-appellant.
STERNBERG, Judge.
Defendant William Terranova was charged in a five count information with the following offenses: (1) Theft, (2) Conspiracy to Commit Theft, (3) Fraudulent Practices in Connection with the Sale of Securities, (4) Sale of Securities Without a License, and (5) Sale of Unregistered Securities. Terranova was convicted by a jury on all five counts and he appeals alleging error on Counts 1, 3, 4 and 5. We affirm as to Counts 4 and 5, and reverse as to Counts 1 and 3.
The relevant facts are these: In late 1973, Terranova became involved with one James Westover in connection with the anticipated purchase of the Little King Ranch near Granby, Colorado. This ranch is an elaborate and luxurious development containing 117 acres upon which are located guest houses and other buildings, together with tenant recreational facilities capable of accommodating 120 people. Title to the ranch was held by a bank which had foreclosed on it at the time of the bankruptcy of its previous owner. Westover and a group of wealthy, and in some instances prominent, persons from this country and abroad became interested in purchasing the property and developing it into a private club for affluent members. To this end they formed a Colorado corporation, Little King Ranch, Limited, which was to acquire the property. Terranova became secretary and treasurer of the corporation.
Terranova, Westover, and others involved with the corporation met about five times with two individuals who were undercover agents for the Colorado Crime Strike Force. The agents masqueraded as underworld figures who had large sums of money to invest. Numerous representations were made to the agents regarding the ranch. Among these representations were the assignment of a grossly inflated value to the ranch, a claim that certain nationally prominent *365 and wealthy individuals would be part of the organization, and a claim that 337 millionaires had been enlisted as members. Subsequently, Terranova and others offered to sell the agents a "membership" in the ranch for $6,000 and stock in the Little King corporation "worth" $42,000 at a fifty percent discount. The agents agreed to purchase $20,000 worth of stock.
A meeting was held to consummate the sale at which Terranova produced a stock certificate signed by him and the corporation's attorney who had allegedly received a power of attorney from the corporation's president. The agent testified that Terranova said the stock was registered, and the agent then called the corporation's attorney who verified the registration and said the stock could be sold. Having supposedly obtained the attorney's advice that the stock could be sold, the agent consummated the purchase and Terranova and others were arrested.
It is undisputed that no power of attorney had been obtained, that the stock was not registered, that it was valueless, and that Terranova did not have a security salesman's license. And, the corporation did not acquire title to the ranch.

SCIENTER
At trial, when the corporation's attorney was called to testify as to the advice he had given Terranova regarding the legality of the sale of the stock, his testimony was curtailed. This ruling was based on the judge's determination that scienter, i. e., intent to deceive, manipulate, or defraud, was not an element of Counts 3, 4 and 5 and thus reliance on advice of counsel was irrelevant.
That ruling is the basis of Terranova's first contention of error. We hold that scienter is an element of the crime charged in Count 3 (the Fraudulent Practices charge), but that it is not an element of Count 4 (the Sale Without a License charge) and Count 5 (the Sale of Unregistered Securities charge).
The jury instruction relating to those counts read as follows:
"With respect to Counts Three, Four and Five, the offenses charged are all crimes of strict liability, requiring no proof of specific intent. Intent to commit the crime need not be shown, only the intent to act. The voluntary commission of the forbidden act constitutes the crime charged. This is what is meant by the act of the defendant being done `willfully'
. . . . .
"The requirement for criminal liability of these crimes is the performance by a person of conduct which includes a voluntary act or the omission to perform an act which he is physically capable of performing." (emphasis supplied)
Thus, if scienter is an element of any of the above counts the jury instruction was improper.
The statute under which Terranova was convicted in Count 3, C.R.S. 1963, 125-1-1, now § 11-51-123, C.R.S. 1973, provides that:
"(1) It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly:
(a) To employ any device, scheme, or artifice to defraud;
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person."
This section is identical to § 101 of the Uniform Securities Act, which Act Colorado has adopted. In Uniform Securities Act § 101, 7 Uniform Laws Annot. 695 (Commissioner's Note), it is stated:
"This section is substantially the Securities & Exchange Commission's Rule X-105-5, *366 17 Code Fed.Regs. § 240.10b-5. . .."[1]
While there are no Colorado cases construing the pertinent section of our Uniform Securities Act, our Supreme Court, in interpreting other sections, has stated that, "insofar as the provisions and purposes of our statute parallel those of the federal enactments, such federal authorities are highly persuasive." Lowery v. Ford Hill Investment Co., Colo., 556 P.2d 1201, (announced November 15, 1976). See also Sauer v. Hays, 36 Colo.App. 190, 539 P.2d 1343 (1975). Consequently we look to Federal court interpretation of Rule 10b-5 and the nature of the intent required to sustain a violation of the rule.
Since the promulgation of Rule 10b-5, Federal court decisions have been at odds as to whether scienter was an element in a charge of violation of the rule. See Annot., 20 A.L.R.Fed. 227.
The recent case of Ernst & Ernst v. Hochfelder, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), however, appears to have resolved the inconsistencies previously present in this area. The specific issue resolved by the United States Supreme Court in that case was whether a private cause of action for damages would lie under § 10(b) of the Security Exchange Act of 1934 and Rule 10b-5 in the absence of any allegation of "scienter"intent to deceive, manipulate or defraud.
The court traced the legislative history of the Securities Exchange Act and Rule 10b-5 and held that, in an action for civil damages under § 10(b) of the Securities Exchange Act of 1934 and Securities & Exchange Commission Rule 10b-5, some element of scienter was necessary and liability could not be imposed for negligent conduct alone, and therefore in the absence of an allegation of intent to deceive, manipulate, or defraud on the defendant's part, such an action could not be maintained.
While the rule enunciated in Ernst & Ernst relates to civil liability, nevertheless, we note that in Ernst & Ernst, the Supreme Court, in referring to a Senate report discussing the various abuses that give rise to the need for regulation of the stock exchange, stated:
"Significantly, we think in the [Report's] discussion of the need to regulate [manipulative practices] there is no indication that any type of criminal or civil liability is to attach in the absence of scienter." (emphasis supplied)
Consequently, while certain violations of the Federal Act are strict liability offenses (e. g., § 11(a) of the Securities Act of 1933liability of issuers for misrepresentation in Registration Statement, see Ernst & Ernst, supra), the offense here at issue is not of that type. Thus, submission of the above quoted jury instruction, which made misrepresentation in connection with the sale of a security a strict liability offense, was error. See Resort Car Rental System, Inc. v. Chuck Ruwart Chevrolet, Inc., 519 F.2d 317 (10th Cir. 1975). See also United States v. Danser, 26 F.R.D. 580 (D.Mass. 1959); Frank v. United States, 220 F.2d 559 (10th Cir. 1955).
In view of our analysis above, we further hold that advice of counsel is relevant to the fraudulent practices charge (Count 3), and Terranova should be entitled to show, if he can, that he sold the securities based upon his good faith reliance on such advice that he could do so legally. See, e. g., United States v. Danser, supra. However, reliance on advice of counsel is *367 not an absolute defense to the above charges, but rather merely a factor for the jury to consider. See United States v. Piepgrass, 425 F.2d 194 (9th Cir. 1970); Tarvestad v. United States, 418 F.2d 1043 (8th Cir. 1969), cert. denied, 397 U.S. 935, 90 S.Ct. 944, 25 L.Ed.2d 116. See generally Note, Reliance on Advice of Counsel, 70 Yale L. J. 978 (1961). Should there be a retrial on the charge of having violated the fraudulent practices provisions of the Securities Act, the jury should be instructed that good faith is a defense and that scienter must be shown. Simple negligence alone cannot be the basis of liability. See Ernst & Ernst v. Hochfelder, supra, at n.12, and accompanying text.
We agree with the trial court, however, that as to Count 4, sale of securities without a license, and Count 5, sale of unregistered securities, only a general intent, and not scienter, need be shown. Regarding Count 5 we note that C.R.S. 1963 125-1-6, now XX-XX-XXX, C.R.S. 1973 and 15 U.S.C. § 77e are identical in thrust although the wording of the Federal statute is more comprehensive. Essentially, the sale of unregistered securities which do not qualify for an exemption is made unlawful.
The cases under 77e of the Federal act are split as to whether scienter is an element of the offense. Compare, e. g., United States v. Crosby, 294 F.2d 928 (2d Cir. 1961), cert. denied, 368 U.S. 984, 82 S.Ct. 599, 7 L.Ed.2d 523; and United States v. Tortorello, 480 F.2d 764 (2d Cir. 1973), cert. denied, 414 U.S. 866, 94 S.Ct. 63, 38 L.Ed.2d 86; with United States v. Custer Channel Wing Corp., 376 F.2d 675 (4th Cir. 1967), cert. denied, 389 U.S. 850, 88 S.Ct. 38, 19 L.Ed.2d 119; and United States v. Sussman, 37 F.Supp. 294 (E.D.Pa.1941).
We believe the better reasoned rule to be that enunciated in United States v. Custer Channel Wing Corp., supra. There the court held that in a direct criminal prosecution or in a proceeding for injunctive relief, it is "sufficient to show that the act of selling unregistered stock was willful and intentional, without the necessity of showing evil purpose or bad motive with specific intent to violate the law . . .." See also Nees v. Securities & Exchange Commission, 414 F.2d 211 (9th Cir. 1969); Tager v. Securities & Exchange Commission, 344 F.2d 5 (2d Cir. 1965); Gilligan, Will & Co. v. Securities & Exchange Commission, 267 F.2d 461 (2d Cir. 1959), cert. denied, 361 U.S. 896, 80 S.Ct. 200, 4 L.Ed.2d 152, and see generally 2 L. Loss, Securities Regulation 1310 n.88 (2d ed. 1961) and cases cited therein.
Concerning Count 4, the sale of securities without a license, we also hold scienter not to be an element of the charge. 15 U.S.C. § 78o is roughly analogous to our statute, C.R.S. 1963, 125-1-2, now § 11-51-104, C.R.S. 1973.
Cases decided under that Federal statute deal predominantly with suits brought against brokers who have violated the fiduciary relationship between them and their clients. The statute similarly prohibits sale of securities by unregistered brokers. But, regarding the first class of cases, scienter has not been found to be an element of the crime and brokers' licenses have been suspended under the Federal act where it is shown that the broker merely commits the act which constitutes the offense. See, e. g., Tager v. Securities & Exchange Commission, supra; Capital Funds, Inc. v. Securities & Exchange Commission, 348 F.2d 582 (8th Cir. 1965); Gearhart & Otis, Inc. v. Securities & Exchange Commission, 121 U.S.App.D.C. 186, 348 F.2d 798 (1965).
The need for proof of scienter as an element of Count 3 but not of Counts 4 and 5 is clear when the nature of the crimes is compared. The very basis of Count 3 is fraud, in which state of mind is of peculiar importance. On the other hand, state of mind is of as little relevance in a charge of sale of an unregistered security by an unlicensed person (Counts 4 and 5) as it would be in a prosecution for a speeding violation.

CROSS-EXAMINATION
Terranova next contends that the court erroneously allowed certain cross-examination of him. We disagree. When testifying on direct examination, Terranova *368 stated that he had never been in any trouble in his life. On cross-examination, the People, in an attempt to impeach his credibility, asked, "Isn't it a fact that you have been arrested on . . .."whereupon defense counsel objected and moved for a mistrial.
People v. Mejia, Colo., 534 P.2d 779 (1975), is dispositive of this issue. There defense counsel, on direct examination, asked the defendant if he had ever been arrested for a misdemeanor. The defendant replied that except for drunkenness, he had never been arrested. On cross-examination the prosecutor pursued this line of questioning asking defendant about an arrest in Texas. In determining that cross-examination need not have been limited to prior felony convictions only, the court reasoned:
"The purpose of this line of questioning is to test the truth of the defendant's testimony on direct examination and on this basis, there is no error. In a case like this, where defendant's misrepresentations might mislead the jury unless corrected, such inquiry of the defendant on cross-examination is entirely proper."
See also Molton v. People, 118 Colo. 147, 193 P.2d 271 (1948).

Theft
Terranova's final contention of error is that the court erred in failing to grant his motion for judgment of acquittal as to Count 1, theft by deception. We agree.
The General Assembly, intending to define one crime of theft which would incorporate all acts involving the taking or obtaining of personal property without physical force, and in an effort to eliminate distinctions and technicalities which previously existed, Maes v. People, 178 Colo. 46, 494 P.2d 1290 (1972); Hucal v. People, 176 Colo. 529, 493 P.2d 23 (1971), adopted a theft statute. Section 18-4-401, C.R.S. 1973. The part of the statute relevant here states as follows:
"A person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception. . ." (emphasis supplied)
The very nature of the crime of theft by deception requires proof that misrepresentations caused the victim to part with something of value and that the victim relied upon the swindler's misrepresentation. W. LaFave & A. Scott, Criminal Law sec. 90. There can be no "deception" if the victim is not deceived. Proof of deception is not present here.
On cross-examination, the undercover agent acknowledged that he knew that the stock he purchased was worth nothing. There being no proof that the misrepresentation caused the agent to purchase the stock, prosecution for the completed substantive crime of theft by deception must fail. See, W. LaFave & A. Scott, Criminal Law, supra; R. Perkins, Criminal Law 308 (2d ed.); 2 R. Anderson, Wharton's Criminal Law & Procedure 600 (1957). Compare People v. Camodeca, 52 Cal.2d 142, 338 P.2d 903 (1959), wherein a conviction for attempted grand theft was upheld notwithstanding the victim's lack of reliance. As distinguished from the completed crime, the court there held that the only elements of proof needed were specific intent to commit a crime plus a direct unequivocal act. Thus the issue of reliance by the victim was held to be irrelevant. See also People v. Darr, Colo.App., 551 P.2d 735 (1975). There being independent evidence to support it, the conviction of the crime of conspiracy to commit theft, Count 2, is not affected by our reversal of the theft convictions. See 18-2-206(2), C.R.S. 1973; and compare Starr v. People, 113 Colo. 268, 157 P.2d 135 (1945) with Robles v. People, 160 Colo. 297, 417 P.2d 232 (1966).
The judgments as to Counts 2, 4 and 5 are affirmed; the judgment as to Count 1 is reversed, and the cause remanded with instructions to dismiss it. As to Count 3, the judgment is reversed and the cause remanded for a new trial, or for such other proceedings as may be deemed proper, consistent with this opinion.
COYTE and ENOCH, JJ., concur.
NOTES
[1] That rule reads:

§ 240.10b-5 Employment of manipulative and deceptive devices.
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interestate (sic) commerce, or of the mails or of any facility of any national securities exchange,
(a) To employ any device, scheme, or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."