NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

PETER J. WORKUM, *Appellant.*

No. 1 CA-CR 17-0306
1 CA-CR 19-0127 PRPC
(Consolidated)
FILED 1-14-2020

Appeal from the Superior Court in Maricopa County
No. CR2012-009416-001 DT
The Honorable Pamela S. Gates, Judge

**AFFIRMED; REVIEW GRANTED; RELIEF DENIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michelle L. Hogan, Mary L. Harriss
*Counsel for Appellee*

Christian Dichter & Sluga, P.C., Phoenix
By Stephen M. Dichter, Daniel B. Bernardone
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge Diane M. Johnsen and Judge James B. Morse Jr. joined.

---

**J O N E S**, Judge:

**¶1**        Peter Workum appeals his convictions and sentences for theft, money laundering in the first degree, fraudulent schemes and artifices, and residential mortgage fraud.  He further seeks review of the superior court's denial of his petition for post-conviction relief (PCR).  For the following reasons, we affirm his convictions and sentences, grant review of the denial of his PCR, and deny relief.

**FACTS AND PROCEDURAL HISTORY**

**¶2**        Between 2005 and 2007, the victim and his wife worked with an attorney to form a limited liability company, Deveras, L.L.C.[1]  Based upon a miscommunication with counsel, the articles of organization were never filed with the State.  Mistakenly believing the company had been properly formed, the victim transferred the deed to his home to Deveras, L.L.C.

**¶3**        In 2010 and 2011, the victim and Chad K. imported and distributed chlorine through a series of separate limited liability companies (collectively, Shiner) financed in part by loans from the victim and Owen F.  Chad, a certified public accountant, managed Shiner and handled all its finances.

**¶4**        By the summer of 2011, Shiner struggled to repay its debts, and Owen told Chad that Workum might be interested in providing a cash advance to Shiner.  At an informal meeting, Chad and Workum discussed the details of a short-term loan with a high interest rate, but nothing was reduced to writing.  At some point, Workum advised Chad that "if [Shiner]

---

[1]        "We view the facts in the light most favorable to sustaining the convictions with all reasonable inferences resolved against the defendant." *State v. Harm*, 236 Ariz. 402, 404, ¶ 2 n.2 (App. 2015) (quoting *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996)).

were to default or if anything happens, I'm coming after you . . . I'm coming after everything."  The victim did not hear the details of the loan, did not agree to the specific terms of the loan, and did not pledge his personal assets as collateral for Shiner's debt.

**¶5**　　　　In September 2011, Workum wired $25,000 to Owen, who then transferred $23,000 to Shiner.  When Shiner failed to repay the loan, Workum focused his repayment efforts at Shiner and Chad, eventually filing an involuntary bankruptcy petition against Shiner claiming Workum was owed $40,700 on the loan.

**¶6**　　　　Meanwhile, in October 2011, Workum filed articles of organization for Deveras, L.L.C. that identified Workum as its manager. Having assumed control of the company the victim believed he had created several years earlier, Workum transferred the victim's home — the title to which was already held by Deveras, L.L.C. — to a different company Workum controlled.  Although Workum met with Owen and the victim to discuss the outstanding loan, Workum never told either that he was actively pursuing the victim's personal assets as repayment.

**¶7**　　　　A few months later, by claiming he lawfully owned the home, used it as a rental property, and did not want to inform the tenants of the loan, Workum was able to obtain a $220,000 non-recourse loan from CTP Funding, L.L.C. (CTP), which was secured by a deed of trust on the home. Workum then distributed the proceeds of the loan to various other companies he controlled.  Workum transferred the beneficial interest in the deed of trust securing $137,000 in debt to Owen, who understood he would receive the funds after the victim's home was sold at a trustee sale.

**¶8**　　　　By April 2012, Workum had not made any payments on the loan and CTP initiated a trustee sale of the victim's home.  Upon receiving notice of the sale, the victim contacted Workum, CTP, and an investigator with the Arizona Attorney General's Office.  Workum relinquished his interest in Deveras, L.L.C. back to the victim but did not repay CTP or transfer the victim's home to the victim or Deveras.  The trustee's sale was canceled, and title insurance covered CTP's loss**.**

**¶9**　　　　The State ultimately prosecuted Workum for two counts of theft of property valued at more than $25,000 (counts 1 and 4), two counts of money laundering in the first degree (counts 2 and 6), one count of fraudulent schemes and artifices (count 3), and one count of residential mortgage fraud (count 5).  After an eleven-day trial, the trial court denied Workum's motion for judgment of acquittal, and the jury found him guilty

on all counts.  The court then sentenced Workum to concurrent terms of imprisonment, the longest of which was five years.

¶10        Workum timely appealed.  While the appeal was stayed, Workum filed a timely petition for PCR.  The superior court held evidentiary hearings and denied relief.  Workum petitioned for review, and we granted his request to consolidate the petition and appeal.  *See* Ariz. R. Crim. P. 31.4(b).[2]  We have jurisdiction over both matters pursuant to Arizona Revised Statutes (A.R.S.) §§ 12-120.21(A)(1), 13-4031, -4033(A)(1), and Arizona Rule of Criminal Procedure 32.9.

## DISCUSSION

### I.    Sufficient Evidence Supports the Verdicts.

¶11        Workum argues the trial court erred in denying his motion for judgment of acquittal because insufficient evidence supports his convictions.  We review claims of insufficient evidence *de novo* and will affirm so long as the record contains substantial evidence to support the verdicts.  *State v. West*, 226 Ariz. 559, 562, ¶¶ 15-16 (2011).  Substantial evidence is evidence that, when viewed in the light most favorable to sustaining the verdict, "reasonable persons could accept as adequate and sufficient to support a conclusion of [the] defendant's guilt beyond a reasonable doubt."  *Id.* at ¶ 16 (quoting *State v. Mathers*, 165 Ariz. 64, 67 (1990)).  We do not distinguish between direct and circumstantial evidence, *State v. Stuard*, 176 Ariz. 589, 603 (1993) (citing *State v. Harvill*, 106 Ariz. 386, 391 (1970)), or reweigh the evidence, *State v. Tison*, 129 Ariz. 546, 552 (1981) (collecting cases).  Applying this standard, we find no error in Workum's convictions.

¶12        Workum argues, generally, that the State failed to prove criminal intent because he presented testimony that conflicted with the State's theory.  But substantial evidence may exist even when the jury hears conflicting evidence.  *See State v. Felix*, 234 Ariz. 118, 120-21, ¶ 10 (App. 2014) (citing *State v. Soto-Fong*, 187 Ariz. 186, 200 (1996)).  The weight given to witness testimony at trial is a question of credibility left entirely to the jury.  *Id.*  Additionally, criminal intent is typically proven by circumstantial evidence.  *Harm*, 236 Ariz. at 406, ¶ 13 (citing *State v. Lester*, 11 Ariz. App. 408, 410 (1970), and then *State v. Routhier*, 137 Ariz. 90, 99 (1983)).  The

---

[2]        Absent material changes from the relevant date, we cite the current version of rules and statutes.

record contains substantial circumstantial evidence that Workum, an experienced businessman, acted deliberately to use the victim's property to pay Shiner's debts without the victim's permission. Thus, sufficient evidence supports the jury's determination that Workum possessed the requisite criminal intent, as well as the remaining elements, of each count. *See infra* ¶¶ 13-16.

### A.     Counts 1 and 4: Theft

**¶13**          As relevant here, a person is guilty of theft if, without lawful authority, he "knowingly . . . [c]ontrols property of another with the intent to deprive the other person of such property" or "[o]btains property of another by means of any material misrepresentation with intent to deprive the other person of such property," and the property is valued at $25,000 or more. A.R.S. § 13-1802(A)(1), (3), (G). As to count 1, substantial evidence showed that Workum filed articles of organization falsely establishing himself as manager of Deveras, L.L.C. and then transferred title of the victim's home, valued at over $200,000, to a company Workum controlled. Additionally, the victim testified he did not pledge his home as collateral for the loan to Shiner and did not authorize the transfer of the deed. As to count 4, substantial evidence showed that Workum obtained the $220,000 loan from CTP by misrepresenting the purpose of the loan and the circumstances surrounding his ownership of the property he pledged as security for the loan.

### B.     Counts 2 and 6: Money Laundering in the First Degree

**¶14**          A person is guilty of money laundering in the first degree if he "[k]nowingly initiates, organizes, plans, finances, directs, manages, supervises or is in the business of money laundering." A.R.S. § 13-2317(A)(1). A person commits money laundering if he "acquires or maintains an interest in, transacts, transfers, transports, receives or conceals the existence or nature of racketeering proceeds knowing or having reason to know that they are the proceeds of an offense." A.R.S. § 13-2317(B)(1). Racketeering activity includes theft committed for financial gain. A.R.S. §§ 13-2301(D)(4)(b)(v), -2317(F)(3)(c). For counts 2 and 6, substantial evidence showed that Workum obtained control of the victim's home and the proceeds of a loan secured by that home by means of theft. Workum then transferred the home and the proceeds of the loan to various companies he controlled. Additionally, an investigator testified for the State that disbursing funds to multiple companies, or "layering," is a common method of concealing unlawful conduct.

### C.      Count 3: Fraudulent Schemes and Artifices

**¶15**        A person is guilty of fraudulent schemes and artifices if he "pursuant to a scheme or artifice to defraud, knowingly obtains any benefit by means of false or fraudulent pretenses, representations, promises or material omissions."   A.R.S. § 13-2310(A).   As to count 3, substantial evidence showed that Workum obtained the CTP loan by lying about the circumstances of his ownership interest in the victim's home and its occupancy, effectively preventing CTP from communicating with the victim.

### D.      Count 5: Residential Mortgage Fraud

**¶16**        A person is guilty of residential mortgage fraud if, "with the intent to defraud, the person . . . [k]nowingly makes any deliberate misstatement, misrepresentation or material omission during the mortgage lending process that is relied on by a mortgage lender, borrower or other party to the mortgage lending process."  A.R.S. § 13-2320(A)(1).  As to count 5, substantial evidence showed CTP relied upon deliberately false information provided by Workum during the mortgage lending process.

## II.      Preclusion of Victim's Prior Business Transactions Was Not Prejudicial.

**¶17**        Workum argues the trial court erred in precluding evidence that the victim defrauded lenders and investors in prior business transactions.  On appeal, Workum contends the evidence was admissible under Arizona Rule of Evidence 404(b) and as third-party culpability evidence.[3]  Because Workum did not move to admit the evidence on these theories at trial, he has waived all but fundamental error review. *See State v. Hargrave*, 225 Ariz. 1, 11, ¶ 28 (2010) (citing *State v. Henderson*, 210 Ariz. 561, 567-68, ¶¶ 19-20 (2005)); *State v. Bolton*, 182 Ariz. 290, 304 (1995) (limiting consideration of evidentiary theories advanced for the first time on appeal to fundamental error review).

**¶18**        To establish fundamental error, a defendant must show that error occurred and that the error was so egregious the defendant could not possibly have received a fair trial, the error went to the foundation of the

---

[3]      Workum concedes that no legal authority supports admission of the evidence under Arizona Rule of Evidence 404(a)(2), which conditionally permits "[e]vidence of a pertinent trait of character of the victim of the crime offered by an accused."  *See State v. Coghill*, 216 Ariz. 578, 582 (App. 2007) (identifying other limitations on the admissibility of other-act evidence).

case, or the error took from the defendant a right essential to his defense. *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018) (citing *Henderson*, 210 Ariz. at 568, ¶ 23). If fundamental error is established under either of the latter two circumstances, the defendant must also prove prejudice. *Id.* (citing *Henderson*, 210 Ariz. at 568, ¶ 26).

**¶19**  Workum fails to prove that the preclusion of the evidence was prejudicial or deprived him of a fair trial. Although the trial court prevented Workum from eliciting testimony about specific business transactions to show the victim had a history of "scamming" lenders and investors, the court did allow Workum to question the victim about using funds from a relative's company to invest in Shiner and permitted the victim's business associate to testify that the victim was not entirely trustworthy. Workum also elicited testimony that the victim had a history of unwise business decisions. Workum then painted the victim as a "crook" and liar in his closing argument. Thus, the jury heard evidence and argument that the victim mishandled investments and lacked trustworthiness in business relationships, and no fundamental, prejudicial error occurred.

## III.  Trial Counsel's Absence During the Verdicts Was Not Structural Error.

**¶20**  Workum argues his trial counsel's absence when the jury returned its verdicts deprived him of his constitutional right to counsel.[4] *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence."). Workum did not raise this argument with the trial court but contends on appeal that the circumstances constitute structural error. We review Sixth Amendment issues *de novo*. *State v. Rasul*, 216 Ariz. 491, 493, ¶ 4 (App. 2007) (citing *State v. Glassel*, 211 Ariz. 33, 50, ¶ 59 (2005), and *United States v. Goldberg*, 67 F.3d 1092, 1097 (3d Cir. 1995)).

**¶21**  A criminal defendant has the right to assistance of competent counsel at trial at every stage of the proceedings where the "substantial

---

[4]  To the extent Workum asserts that trial counsel's absence constituted ineffective assistance of counsel, we address the argument solely in the context of our PCR review. *See State v. Spreitz*, 202 Ariz. 1, 3, ¶ 9 (2002) (reiterating that "the appellate court simply will not address" ineffective assistance of counsel claims on direct appeal, as such claims "are to be brought in Rule 32 proceedings").

rights of the accused may be affected." *State v. Conner*, 163 Ariz. 97, 104 (1990). Counsel's absence constitutes structural error where the "fail[ure] to subject the prosecution's case to meaningful adversarial testing" renders "the adversary process presumptively unreliable." *Glassel*, 211 Ariz. at 51, ¶ 62 (quoting *United States v. Cronic*, 466 U.S. 648, 659 (1984)).

**¶22** The record does not support the contention that Workum's trial counsel completely failed to subject the State's case to adversarial testing. Although trial counsel was absent when the jury returned guilty verdicts, he was present for all other critical stages of the proceedings, conducted pretrial litigation, called and cross-examined witnesses, and presented evidence and argument on Workum's behalf. *See, e.g., id.* at ¶ 64 (rejecting a claim of deprivation of counsel where the record demonstrated that trial counsel had presented arguments and evidence). Additionally, Workum's *Knapp* counsel[5] actively participated throughout trial and was present when the jury returned guilty verdicts. On this record, no structural error occurred.

## IV. Workum Did Not Prove Ineffective Assistance of Trial Counsel.

**¶23** Workum contends the superior court erred in denying his PCR petition based on his claim of ineffective assistance of trial counsel.[6] Workum argued counsel was ineffective because he was unreceptive to Workum's comments, improperly advised him not to testify, and rushed through the trial to go on vacation. Workum also argued he committed the offenses based upon advice from civil counsel, believing his actions to be lawful, and trial counsel failed to present an advice-of-counsel defense. If available,[7] an advice-of-counsel defense requires a showing that:

---

[5] Pursuant to *Knapp v. Hardy*, 111 Ariz. 107, 111 (1974), privately retained counsel may associate with appointed counsel in representing a criminal defendant.

[6] Workum is precluded from raising any issues that were raised or could have been raised on appeal. Ariz. R. Crim. P. 32.2(a). Accordingly, we decline to address any issues that exceed the scope of the claim of ineffective assistance of counsel.

[7] Although the parties, Workum's trial counsel, and the superior court seem to accept this premise, it is unclear whether an "advice of counsel" defense exists in Arizona. We have identified no Arizona case law on the

> 1) [the defendant] placed all the relevant facts known to him before his counsel 2) counsel rendered an opinion on the propriety of a particular course of action 3) he believed that the opinion was rendered in good faith, and 4) in reasonable reliance upon that opinion he engaged in a course of action which corresponded with his counsel's opinion.

*State v. Fendler*, 127 Ariz. 464, 478 (App. 1980) (identifying "general rule" of advice-of-counsel defense under federal law) (citing *United States v. Danser*, 26 F.R.D. 580, 587 (D. Mass. 1959), and *Bursten v. United States*, 395 F.2d 976 (5th Cir. 1968)).

**¶24** We will not disturb a superior court's ruling on a petition for PCR absent an abuse of discretion. *State v. Gutierrez*, 229 Ariz. 573, 577, ¶ 19 (2012) (citing *State v. Bennett*, 213 Ariz. 562, 566, ¶ 17 (2006)). A defendant bears the burden of showing the court abused its discretion. *State v. Poblete*, 227 Ariz. 537, 538, ¶ 1 (App. 2011). On review, we accept the court's factual findings unless clearly erroneous, but review legal conclusions and any alleged constitutional issues *de novo*. *State v. Pandeli*, 242 Ariz. 175, 180, ¶¶ 3-4 (2017).

**¶25** To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below objectively reasonable standards and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Nash*, 143 Ariz. 392, 397 (1985). To establish prejudice, a defendant must show there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. A criminal defendant does not have the right to "perfect counsel, only competent counsel," *State v. Valdez*, 160 Ariz. 9, 15 (1989), *overruled on other grounds by Krone v. Hotham*, 181 Ariz. 364, 366 (1995), and ineffectiveness must be "a demonstrable reality rather than a matter of speculation," *State v. McCall*, 160 Ariz. 119, 127 (1989) (citation omitted).

---

subject, and, on its face, the theory appears contrary to our legislature's decree that "[i]gnorance or mistake as to a matter of law does not relieve a person of criminal responsibility." A.R.S. § 13-204. Because Workum fails to prove the defense was viable, *see infra* ¶ 28, we do not address the issue, which was neither briefed nor argued.

¶26　　　　Here, the trial court found Workum raised colorable claims of ineffective assistance of trial counsel and conducted bifurcated evidentiary hearings. At the hearings, Workum testified to the deficiencies identified above. *See supra* ¶ 23. Workum's trial counsel testified that he presented a strategically targeted defense, did not rush the trial for personal reasons, and maintained a good working relationship with Workum throughout the trial. And, trial counsel was assisted by *Knapp* counsel and a defense investigator in presenting Workum's case. Workum's civil counsel did not testify regarding his role in the events underlying Workum's convictions, choosing instead to invoke his right to remain silent.

¶27　　　　In two detailed rulings, the superior court denied the PCR petition. The court first found that Workum failed to show that his trial counsel disregarded his requests or forced him not to testify. Rather, the court found that "trial counsel provided credible and reasonable explanations for his recommendation that Mr. Workum waive his right to testify" and "credibly testified that he did not abbreviate Mr. Workum's defense for any reason other than his assessment that the State had failed to meet its burden of proof." The court then found Workum failed to prove by a preponderance of the evidence that the advice-of-counsel defense was viable on the facts, i.e., Workum failed to prove he sought advice from civil counsel and acted in accordance with that advice in pursuing the transactions forming the basis of the offenses. This was based, at least in part, upon the court's finding that Workum's testimony at the hearing "was implausibly evolving and refuted by credible trial witnesses." As such, the court concluded Workum failed to show the alleged errors prejudiced him.

¶28　　　　We find no abuse of discretion. Just as we do not reweigh trial evidence on appeal, we do not reweigh evidence presented at a post-conviction evidentiary hearing. *See State v. Sasak*, 178 Ariz. 182, 186 (App. 1993). The superior court acted within its discretion in considering Workum's credibility as a witness, *see State v. Fritz*, 157 Ariz. 139, 141 (App. 1988), and properly held Workum to his burden of proving the factual allegations underlying his claim by a preponderance of the evidence, *see* Ariz. R. Crim. P. 32.13(c). The court's conclusion that an advice-of-counsel defense was not viable and/or would not have affected the outcome of the trial is reasonably supported by the evidence; indeed, Workum did not present evidence that he provided his civil counsel with all the relevant facts or explain what advice he received based on those facts. Thus, on this record, we cannot say that "but for" the alleged errors, the result of the proceeding would have been different, or that the court erred in applying the *Strickland* test.

**CONCLUSION**

**¶29** Workum's convictions and sentences are affirmed. Additionally, we grant review but deny relief from the denial of his petition for PCR.



AMY M. WOOD • Clerk of the Court
FILED:  AA