IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO



FILED BY CLERK

NOV -1 2007

COURT OF APPEALS
DIVISION TWO

THE STATE OF ARIZONA,              )
                                  )      2 CA-CR 2006-0215
                    Appellee,     )      DEPARTMENT B
                                  )
          v.                      )      O P I N I O N
                                  )
JAMES PRENTISS COGHILL,           )
                                  )
                    Appellant.    )
                                  )

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20042573

Honorable Ted B. Borek, Judge

REVERSED AND REMANDED

Terry Goddard, Arizona Attorney General
  By Randall M. Howe and Diane Leigh Hunt                          Tucson
                                                     Attorneys for Appellee

Robert J. Hooker, Pima County Public Defender
  By Michael J. Miller                                             Tucson
                                                    Attorneys for Appellant

E C K E R S T R O M, Presiding Judge.

¶1 Appellant James Prentiss Coghill was convicted after a jury trial of fourteen counts of first-degree sexual exploitation of a minor under the age of fifteen, all dangerous crimes against children and class two felonies, and one count of attempted sexual exploitation of a minor, a class three felony. Before sentencing, the trial court granted the state's motion to dismiss the dangerous crimes against children allegations on counts two through fourteen. The trial court then sentenced Coghill to a partially mitigated, fifteen-year prison term on count one and placed him on lifetime probation for all the remaining counts.

¶2 On appeal, he contends, *inter alia*, that: (1) the trial court erred when it admitted testimony regarding Coghill's possession of adult pornography, (2) the court violated his constitutional right to counsel when it denied his father's application to appear *pro hac vice*, (3) the court abused its discretion when it allowed the jury to see a video compilation of the child pornography seized from Coghill's motor home after Coghill had offered to stipulate that the computer files contained child pornography, (4) the jury failed to determine Coghill knew the children in the pornographic videos were under fifteen years of age, and (5) the state violated the Arizona Rules of Criminal Procedure when it provided him with copies of his computer's internal hard drives rather than the originals. Because we agree that the evidence regarding Coghill's possession of adult pornography was erroneously admitted and prejudicial, we reverse his convictions and remand the case for a new trial.

2

## BACKGROUND

¶3        Following an argument on April 1, 2003, between Coghill and Jacob Franks, Franks telephoned the police to report Coghill possessed child pornography in Coghill's motor home. In response to that allegation, Pima County Sheriff's Deputies Brenda Schupbach and Jace Judd met Franks at a convenience store. Franks told the deputies that he had been living with Coghill for a week but had known for approximately two years that Coghill had child pornography. He said Coghill kept the files near his computer on compact disks that were labeled "KP."

¶4        Deputies Schupbach and Judd drove to Coghill's motor home where Coghill invited them inside to talk. Coghill said Franks had been living with him for a couple of months. Coghill denied possessing child pornography and consented to Judd's request to look at the compact disks by his computer. He told Judd he did not know what "KP" meant, that some of the disks belonged to Franks, and that Franks must have used that label. The deputies asked Coghill if he would be willing to speak to detectives, and he agreed.

¶5        Shortly thereafter, Coghill spoke with Detective Jefford Englander. In a recorded conversation, part of which was later played for the jury, Coghill told Englander that Franks had also lived with him in the same motor home in Phoenix before Coghill moved to Tucson. Coghill elaborated that he had brought Franks from Phoenix to Tucson to live with him again about a week earlier but maintained in the same statement that Franks had been using his computer constantly for the past couple of weeks. Coghill admitted to

3

Englander that he had downloaded adult pornography and movies to his computer and had copied some of those files to disks. He also told Englander that his computer did not require a password, so either he or Franks could use it without logging on individually.

¶6 Following the interview, Englander secured a search warrant for Coghill's motor home. During that search, officers seized over 650 disks, most of which contained material that was not pornographic. But among them were several disks labeled "KP" and one labeled "dirty." The officers also seized Coghill's computer and a bill for cable internet service in Coghill's name.

¶7 At trial, Franks testified that he had lived with Coghill sporadically during the past few years—for a few months beginning in October 2001; again from May or June 2002 to August of that year; a month or two prior to January 20, 2003; and then for about one week prior to April 1, 2003. Even though he had told the investigating officers he had seen Coghill viewing child pornography on the computer and had even copied a disk for Coghill containing child pornography, on which Franks had handwritten the word "dirty," Franks admitted during cross-examination that he had never actually seen any images of child pornography on the computer screen and had only seen file names on the screen. He also testified that he had previously been convicted of three felonies.

¶8 Coghill testified that Franks had lived with him in Phoenix from September 2001 to November 2001; then from March to April 1, 2002; from the second week of April 2002 to February 2003; again from March 2 to March 9, 2003; and then finally from

March 18 to April 1, 2003. Because Coghill's job as an aircraft mechanic required him to travel, he lived in a motor home, which he parked outside his parents' house in Phoenix when he was not living elsewhere. During the last few days of February 2003, Coghill moved his motor home to Tucson where he had taken a new job.

¶9 Six of the 650 disks confiscated from Coghill contained the fifteen child pornography video files identified in the indictment; each of the six disks had "KP" handwritten on them. The child pornography files on two of those disks had been copied to disk on March 6, 2003. The remaining child pornography files had been copied to disk on May 5, 2002; October 27, 2002; November 12, 2002; and January 21, 2003. Coghill said that he had never seen or touched the disks labeled "dirty" and "KP," and no evidence was presented that Coghill's fingerprints were found on any of the seized items. Detective Englander testified that eight of the fifteen files had once appeared on the hard drive of Coghill's computer, but they had been deleted and overwritten with other files and were only detectable with forensic software. Two of the files could be viewed with that software.

¶10 Alan Kreitl, a forensic document examiner with the Arizona Department of Public Safety, compared the handwriting on twenty-nine disks seized from Coghill's motor home, including all of the "KP" disks, against a handwriting sample provided by Franks. Kreitl concluded that Franks had probably written "dirty" on the disk bearing that label and probably had not labeled the "KP" disks. Kreitl did not compare a sample of Coghill's writing to the labeled disks.

¶11　　　　A Pima County grand jury indicted Coghill for fourteen counts of sexual exploitation of a minor under the age of fifteen and one count of attempted sexual exploitation of a minor. Each count identified a separate computer file and described the alleged child pornography videos in that file. After a jury found Coghill guilty on all counts, the trial court dismissed the dangerous crimes against children allegations on all but one of the counts. It then sentenced Coghill to a partially mitigated, fifteen-year prison term on that count, to be followed by lifetime probation on all the remaining counts.

## ADMISSIBILITY OF ADULT PORNOGRAPHY EVIDENCE

¶12　　　　Coghill claims the trial court erroneously admitted evidence that he had possessed, and had admitted having downloaded and copied to disk, adult pornography. Specifically, Coghill contends that such evidence was unfairly prejudicial, lacked any probative value under any appropriate theory of relevance, and should therefore have been precluded pursuant to Rule 404(b) of the Arizona Rules of Evidence. That rule provides as follows:

> Except as provided in Rule 404(c)[,] evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The trial court admitted the evidence over Coghill's strenuous objection, finding that it demonstrated Coghill's intent, knowledge of what was on his computer, and opportunity to

6

use the computer. In so ruling, the trial court emphasized that the evidence of adult pornography was "intertwined" with the relevant evidence regarding child pornography.

¶13 Four provisions of the Arizona Rules of Evidence govern the admissibility of other-act evidence: "Rule 404(b) requires that the evidence be admitted for a proper purpose, Rule 402 requires that the evidence be relevant, Rule 403 requires that the danger of unfair prejudice not outweigh probative value, and Rule 105 requires that the judge give an appropriate limiting instruction upon request." *State v. Nordstrom*, 200 Ariz. 229, ¶ 54, 25 P.3d 717, 736 (2001). We review for an abuse of discretion a trial court's admission of other-act evidence under those standards. *State v. Gulbrandson*, 184 Ariz. 46, 60, 906 P.2d 579, 593 (1995).

¶14 At trial, Coghill did not dispute that law enforcement officers had found in his residence six compact disks containing child pornography and that the unlawful content had been copied from his computer. Rather, he maintained that he was unaware of the presence of those particular disks among the approximately 650 disks in his motor home and that he had allowed Franks, his occasional roommate and primary accuser, regular access to his computer. Coghill and Franks both testified at trial. Thus, the state was required to marshal evidence that bolstered Franks's credibility and challenged Coghill's on the question of which of them had downloaded, copied to disk, and therefore knowingly possessed, the child pornography.

¶15 The state contends Coghill's admission that he had downloaded and copied adult pornography and the officers' discovery of numerous compact disks containing adult pornography were relevant to the question of whether Coghill had downloaded, copied and possessed child pornography. Specifically, the state asserts the evidence was admissible under Rule 404(b) to prove opportunity, knowledge, and limited intent because it showed "that Appellant had had the intent to permanently record his pornographic viewings and the means and know-how to do so." During the hearing on admissibility, the state had also suggested through the somewhat unclear testimony of Detective Englander that Franks, a sometime resident of Coghill's home, could not possibly have had time to download and copy to disk the volume of child and adult pornography and other nonpornographic computer files found.[1] The trial court's ruling appears to adopt the state's reasoning on all but the last of these points.

¶16 Preliminarily, we agree that evidence demonstrating Coghill's ability, willingness, and superior opportunity to download and copy other material from the internet onto compact disks was both relevant and admissible for proper purposes under Rule 404(b). Such evidence would show that Coghill knew how to acquire the child pornography had he chosen to do so. And the state articulates a proper purpose, expressly itemized in Rule 404(b), when it offers that evidence to show relevant knowledge and opportunity.

---

[1]The state does not articulate this theory of relevance on appeal.

¶17        But the state's analysis, and the trial court's ruling, overlook that the *nature and content* of the other downloaded and copied materials were irrelevant to any of those proper purposes. In fact, Coghill's ability and opportunity to obtain material from the internet could be demonstrated as effectively by his admission that he had downloaded and copied numerous nonpornographic movies and popular television shows—an admission he made immediately after his admission regarding adult pornography—and by the presence of hundreds of homemade, nonpornographic compact disks in his residence.

¶18        Even as to those disks and downloaded files that contained adult pornography, the state's witnesses could easily have referred to them in general terms without disclosing their pornographic nature. Doing so would have sacrificed none of the probative value of that evidence to show Coghill had the ability and opportunity to download and copy child pornography.[2]

¶19        In the context of Rule 404(b), Arizona courts have emphasized the importance of the trial court's role in removing unnecessary inflammatory detail from other-act evidence before admitting it. In *State v. Salazar*, 181 Ariz. 87, 92, 887 P.2d 617, 622 (App. 1994), Division One of this court reversed a defendant's conviction, in part because the trial court had admitted evidence of the defendant's prior crimes without redacting nonprobative,

---

[2]Because Franks also admitted having downloaded adult pornography and copied it to disk, the adult pornographic nature of any computer files, whether found on disk or on the computer's hard drive, would not have assisted the jury in distinguishing whether it was Franks or Coghill who had generated any such files.

unfairly prejudicial details of those crimes. The court specifically commented that trial courts frequently overlook that other-act evidence "can be narrowed or limited to protect both parties by minimizing its potential for unfair prejudice while preserving its probative value." *Id.*

¶20 In so holding, Division One cited with approval the reasoning of the Second Circuit Court of Appeals in *United States v. Harvey*, 991 F.2d 981 (2d Cir. 1993), a case presenting a question very similar to the one we address here. *Salazar*, 181 Ariz. at 92, 887 P.2d at 622. In *Harvey*, the Second Circuit reversed a conviction for knowing receipt of child pornography because the trial court had permitted the prosecutor to elicit evidence that the defendant also possessed some particularly distasteful adult pornography. 991 F.2d at 996.

¶21 Finally, this court has also reversed a defendant's conviction when the state elicited arguably probative other-act evidence when ample, nonprejudicial evidence had already been admitted for the same purpose. In *State v. Ballantyne*, 128 Ariz. 68, 70-71, 623 P.2d 857, 859-60 (App. 1981), the prosecutor questioned the defendant about his alleged ties to the Hell's Angels motorcycle gang to demonstrate the defendant's expertise with motorcycles, a relevant fact in the context of the defendant's prosecution for aggravated assault on a police officer. Observing that the defendant had already admitted his familiarity with motorcycles in general and with his own motorcycle in particular, we found that any probative value his ties to the notorious motorcycle gang might have was outweighed by the

highly prejudicial nature of that affiliation. *Id.* at 71, 623 P.2d at 860; *see also Old Chief v. United States*, 519 U.S. 172, 184, 117 S. Ct. 644, 652 (1997) (court must consider existence of less prejudicial alternative evidence in weighing probative value of challenged evidence against risk of unfair prejudice).

¶22　　　　As in each of those cases, the trial court here overlooked that the adult pornographic nature of some of the computer files was a fact unnecessary to the probative purposes asserted for admitting those files. When offered to show Coghill possessed the requisite ability, knowledge, and opportunity to download material from the internet to his computer hard drive or to copy such material onto compact disks, the content of the material had no relevance and should have been precluded under Rule 402, Ariz. R. Evid. *See State v. Smith*, 136 Ariz. 273, 276, 665 P.2d 995, 998 (1983).

¶23　　　　The trial court also found, without explanation, that the adult pornography evidence "does go to the issue of the defendant's intent." In context, the trial court may have used the word "intent" as shorthand to describe the relevance of the evidence on the questions of knowledge and opportunity, a topic we have already addressed. But the court may also have meant to adopt the state's contention at trial that the evidence was relevant to Coghill's intent because a person who downloads adult pornography would be more likely to download child pornography as well.[3] To the extent the trial court meant to adopt

---

[3]In arguing its motion for admissibility below, the state described its argument using the following analogy: "If we are in a heroin possession case, and someone is saying that

11

the latter theory, the evidence could not be properly admitted for that purpose. *See* Ariz. R. Evid. 404(b).

**¶24**        That theory of relevance requires the inference that, because Coghill has the sexual motivation to view and preserve adult pornography, he must have a propensity to do the same with child pornography. Our court has previously observed that "'any distinction (occasionally attempted) between the sexual tendencies of an accused, on the one hand, and his disposition or character, on the other, is spurious.'" *Salazar*, 181 Ariz. at 90, 887 P.2d at 620, *quoting* 1A John H. Wigmore, *Evidence* § 62.2, at 1345 (Tillers rev. 1983) (alteration in *Salazar* omitted).[4] And, Rule 404(b) expressly prohibits the introduction of other-act evidence to "prove the character of a person in order to show action in conformity therewith." Thus, to the extent the court ruled the evidence of adult pornography admissible on the theory that a person who downloads adult pornography would be more prone to download child pornography, we hold it abused its discretion.

---

somebody else did it, and yet, the defendant himself . . . had prescribed medication for Oxycodone, which is . . . very closely related to heroin, why wouldn't that come in?"

[4]Arizona allows the admission of evidence showing "aberrant sexual propensity" under the limited and specific circumstances set forth in Rule 404(c). The prosecution neither sought admission of the adult pornography evidence under that rigorous provision nor laid the appropriate foundation to do so. Under Rule 404(c), such evidence may be admitted only if the state has made specific disclosure of its intent to present evidence of "aberrant sexual propensity" and the trial court makes specific findings regarding the probative value and potential prejudice of such evidence. Here, the trial court acknowledged that the state had failed to seek admission under that standard or to comply with those requirements.

12

¶25 During oral argument, the state asserted for the first time that the trial court properly admitted the evidence of adult pornography on grounds that it was "inextricably intertwined" with other relevant evidence in the case.[5] *See State v. Nordstrom*, 200 Ariz. 229, ¶ 56, 25 P.3d 717, 736 (2001) (other-act evidence not subject to preclusion under Rule 404(b) when evidence of other act is intrinsic to the charged crime or the two are "'inextricably intertwined'"), *quoting State v. Dickens*, 187 Ariz. 1, 18 n.7, 926 P.2d 468, 485 n.7 (1996). However, our review of the record suggests the trial court did not intend to admit the evidence under that specific doctrine. First, the state did not urge admission of the evidence under this theory at trial. And, although the court characterized the adult and child pornography evidence as "intertwined" and "in[t]erconnected," those observations occurred in remarks prefatory to its ultimate conclusion that the evidence was relevant to intent, knowledge and opportunity—components of a Rule 404(b) analysis that would have been unnecessary if the trial court had found the adult pornography evidence intrinsic to the child pornography crimes. *See Nordstrom*, 200 Ariz. 229, ¶ 56, 25 P.3d at 736. Finally, the trial court's minute entry on the topic does not mention this doctrine as a basis for admitting the evidence.

¶26 Even assuming the trial court intended to rule that the evidence of adult pornography was admissible on the ground that it was "inextricably intertwined" and therefore intrinsic to the charged offense, that ruling would be both deficient and incorrect.

---

[5]The state did not address this argument in its brief on appeal.

Other-act evidence does not become "intrinsic" to a case merely because it is characterized as interwoven or intertwined with evidence of the charged offense. Rather, other acts are intrinsic evidence when they are: (1) so intertwined with the charged acts that they cannot be extracted from the case, (2) "part of a 'single criminal episode'" with the crime charged, or (3) "'necessary preliminaries' to the crime charged." *Nordstrom*, 200 Ariz. 229, ¶ 56, 25 P.3d at 736, *quoting Dickens*, 187 Ariz. at 18 n.7, 926 P.2d at 485 n.7. The court made no such findings here. And, as noted, because the state could have fully presented all evidence of the various computer functions performed without mentioning the adult pornographic content of a fraction of those events, we cannot agree with the state's suggestion that the evidence of adult pornography could not be easily extracted from the case.

¶27     In sum, the evidence relating to Coghill's downloading of adult pornographic content and then copying it to disk had no special relevance to show knowledge, opportunity, or intent. Nor was it admissible to show Coghill had a propensity to download child pornography. For those reasons, we must conclude the trial court erred in admitting the evidence pursuant to Rule 404(b).

¶28     We turn, then, to whether that error entitles Coghill to a new trial. When, as here, an issue is properly presented to the trial court and erroneously ruled on, we review for harmless error. *State v. Bible*, 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993). "Error . . . is harmless if we can say, beyond a reasonable doubt, that the error did not contribute to or affect the verdict." *Id.* By that standard, we cannot find the error harmless in this case.

14

¶29     The evidence that Coghill knowingly possessed child pornography, while substantial, was not overwhelming. After the officers told him he had been accused of possessing child pornography, Coghill invited the officers into his home and consented to a search of his compact disks and photo albums—actions arguably inconsistent with guilty knowledge. Coghill never admitted the offense and swore under oath he had lacked any knowledge of child pornography in the motor home. Because the evidence was undisputed that Franks sporadically shared the residence, used Coghill's computer, downloaded files, and had copied child pornography to at least one disk, the jury could not necessarily infer from Coghill's ownership of the residence and computer that Coghill had knowingly possessed the contraband.

¶30     As a result, the case became a credibility contest between Coghill, who testified in his defense, and Franks, whose credibility was challenged with his three prior felony convictions. Both the state and Coghill found support for their contentions in the evidence regarding the timing of both Coghill's and Franks's access to, and use of, the computer. In short, our review of the record suggests that the case against Coghill was close, defensible, and dependent in part on the jury's assessment of Coghill's credibility.[6]

¶31     The state does not contend the evidence was overwhelming. Rather, it maintains that "any error" in mentioning Coghill's possession of adult pornography was

_____

[6]The state's failure to test the six relevant disks for fingerprints or to compare the handwriting on them to Coghill's reinforces this conclusion.

"clearly harmless" because such pornography is both readily accessible and legal and, therefore, would not have prejudiced the jury against Coghill. We disagree for several reasons. First, admitting the evidence created the risk that the jury would consider it for the purpose prohibited by Rule 404(b): the jury might have improperly concluded that a person who downloads adult pornography would have a character trait predisposing that person to also download child pornography.[7] We are reluctant to trivialize an improper use of evidence so expressly prohibited by our rules. Moreover, the state's contention that the evidence of adult pornography had a negligible impact on the case is undermined by the prosecutor's strenuous and persistent efforts to place that evidence before the jury despite its questionable probative value.[8]

¶32 Finally, our jurisprudence does not support the state's view that the legal and readily accessible nature of adult pornography deprives it of any prejudicial impact. In *State v. Grannis*, 183 Ariz. 52, 56-57, 900 P.2d 1, 5-6 (1995), the Arizona Supreme Court found the erroneous admission of pornographic photographs sufficiently prejudicial to justify reversing the first-degree murder convictions of two defendants, one of whom the jury learned "had collected" the pornography, the other of whom might have been only indirectly associated with it. *Id.* at 57, 900 P.2d at 6. And, our own court has approved the Second

---

[7]The jury was not instructed that they were prohibited from making such an improper inference.

[8]The state moved in limine to allow the evidence and reurged its motion on each of the next two days of trial.

Circuit's conclusion that evidence showing a defendant possessed adult pornography, albeit of a particularly offensive nature, created "'disgust and antagonism'" toward the defendant and resulted in "'overwhelming prejudice.'" *Salazar*, 181 Ariz. at 92, 887 P.2d at 622, *quoting Harvey*, 991 F.2d at 996.

¶33        In short, the evidence of Coghill's guilt was not overwhelming. And, because the jury might have used the adult pornography evidence for an improper purpose and because at least some of the jurors might be unfavorably disposed toward Coghill because of it, we cannot deem harmless the erroneous admission of evidence that Coghill possessed adult pornography. Accordingly, we must reverse Coghill's convictions and remand for a new trial.

¶34        Even though we are reversing because the trial court erred in admitting evidence about Coghill's possession of adult pornography, we consider the following issues Coghill has raised because they will likely recur on retrial. *See Grannis*, 183 Ariz. at 57, 900 P.2d at 6 (addressing issues likely to be raised again on retrial).[9]

---

[9]Because we have reversed Coghill's convictions, we do not address his claim that his prison sentence violated the Cruel and Unusual Punishment Clauses of the United States and Arizona Constitutions. And, because a second trial will not necessarily be an evidentiary or strategic duplicate of the first, we need not address whether the state had laid sufficient foundation to encourage the jury to compare the handwriting on one of the disks containing child pornography to the handwriting on another disk that presumably belonged to Coghill.

17

**ADMISSIBILITY OF CHILD PORNOGRAPHY VIDEO FILES**

¶35        Coghill maintains the trial court erred in allowing jurors to watch the child pornography videos found in his residence after he had offered to stipulate that their content fell within the scope of A.R.S. § 13-3553.  Specifically, Coghill offered "to stipulate that every one of [the videos is] identical to the charged items in the Indictment and constitutes a violation of [the sexual exploitation of a minor] statute[]."  He offered a similar stipulation in his opening statement.  The state did not accept Coghill's offer, and the trial court allowed the state to show excerpts of each of the fifteen videos to the jury.  Although Coghill did not argue it below, he now contends that showing the videos to the jury was improper because the probative value of the showing was minimal, given his offer to stipulate to their content, and the risk of unfair prejudice was great, given the indisputably offensive nature of the material.

¶36        The state argues this court has previously failed to find reversible error when a trial court refused to force the state to accept an offered stipulation.  *See State v. Lopez*, 209 Ariz. 58, ¶¶ 4-9, 97 P.3d 883, 884-85 (App. 2004).  In *Lopez*, we held the trial court had not erred when it refused to compel the state to accept a stipulation that the defendant was a prohibited possessor when that status was an element of the offense of weapons misconduct for which the defendant was on trial.  *Id.* ¶¶ 1, 8, 97 P.3d at 884, 885.  Relying on *State ex rel. Romley v. Galati*, 195 Ariz. 9, 985 P.2d 494 (1999), we concluded that, although the stipulation, once read to the jury, would have eliminated any dispute about the

18

defendant's status as a prohibited possessor, compelling the state to accept the stipulation would have improperly "attempted to remove from the jury's consideration elements of the charged offense—that [the defendant had] a prior felony conviction and that his civil right to possess or carry a firearm ha[d] not been restored." *Lopez*, 209 Ariz. 58, ¶ 8, 97 P.3d at 885; *see Galati*, 195 Ariz. 9, ¶¶ 15-16, 985 P.2d at 497 (holding defendants could not stipulate to elements of charged offense and keep stipulation from jury through bifurcated trial).

¶**37** This case differs from *Lopez* and *Galati* in that Coghill's proffered stipulation would not have kept an element of the charged offense from the jury. To find Coghill guilty under § 13-3553(A)(2), the jury was required to find that he had knowingly possessed "any visual depiction in which a minor is engaged in exploitive exhibition or other sexual conduct." Coghill offered to stipulate that the videos shown to the jury were identical to those described in the indictment and that they violated § 13-3553. Each count in the indictment clearly described the sexual conduct portrayed in the corresponding computer video file and identified the male or female participants as "prepubescent." Thus, Coghill's stipulation would neither have removed an element of the offense from the jury's consideration nor shielded the jury from knowledge of the nature of the crime charged. *See State ex rel. Romley v. Galati*, 193 Ariz. 437, ¶ 11, 973 P.2d 1198, 1201 (App. 1998), *approved by Galati*, 195 Ariz. 9, 985 P.2d 497 (emphasizing difference between jury hearing stipulation and stipulation being withheld from jury).

19

¶38       Although *Lopez* and *Galati* do not resolve the issue, neither do they require

the trial court to preclude the evidence merely because a party has stipulated to an

underlying fact.   A trial court maintains discretion in determining whether to exclude

evidence, and an offered stipulation is only one factor to consider in that determination.

*State v. Leonard*, 151 Ariz. 1, 8, 725 P.2d 493, 500 (App. 1986); *see also State v. Chapple*,

135 Ariz. 281, 290, 660 P.2d 1208, 1217 (1983) ("Exhibits which have the tendency to

cause prejudice may often be admissible despite offers to stipulate or the absence of

controverting or contradicting evidence."); *State v. Bracy*, 145 Ariz. 520, 534, 730 P.2d

464, 478 (1985) (despite defendant's offer to stipulate, trial court did not err in admitting

inflammatory photographs as evidence on disputed issue).   We cannot determine whether

the trial court abused that discretion here because Coghill did not ask the trial court to

preclude the evidence once the state refused his offer to stipulate.[10]  *See Leonard*, 151 Ariz.

at 8, 725 P.2d at 500 (requiring evaluation of evidence under Rule 403 when defendant

moves to preclude evidence after state declines offer to stipulate).   Thus, we cannot grant

Coghill relief unless he can demonstrate that the trial court had a duty to evaluate, *sua*

---

[10]Coghill's failure to seek preclusion of the evidence deprived the state of any opportunity to explain its reason for declining to stipulate.   The lack of explanation is especially problematic because the record does not otherwise suggest why the state would not have readily accepted an offer to avoid showing the child pornography to the twelve jurors. *Cf. State v. Berger*, 212 Ariz. 473, ¶ 18, 134 P.3d 378, 382 (2006) (acknowledging ongoing harm to child pornography victims arising from continuing violation of their privacy and continuing disclosure of "'personal matters'"), *quoting United States v. Sherman*, 268 F.3d 539, 547 (7th Cir. 2001).

*sponte*, whether the probative value of the jurors' seeing the videos was substantially outweighed by the danger of unfair prejudice. Coghill has not presented us with any authority supporting that proposition.

¶39 Acknowledging his failure to squarely present the issue to the trial court, Coghill asks us to determine whether the court's failure to preclude the evidence was nonetheless fundamental error. Because we have already granted Coghill a new trial on other grounds and because the parties may employ other strategies in presenting the case on re-trial, we decline to address that issue.

## RIGHT TO COUNSEL

¶40 Coghill next asserts the trial court violated his right under the Sixth Amendment to the United States Constitution to hire counsel of his choice when it denied his motion seeking leave for his father, an attorney licensed in Illinois, to appear *pro hac vice*. The Sixth Amendment guarantees that, "[in] all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. That includes "the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzales-Lopez*, ___ U.S. ___, 126 S. Ct. 2557, 2561 (2006). The right, however, is not absolute. Trial courts retain "wide latitude" in balancing the right to counsel of choice against the needs of the criminal justice system to fairness, court efficiency, and high ethical standards. *Id.* at ___, 126 S. Ct. at 2565-66.

21

¶41　　　　　Here, we need not determine whether the trial court erred in denying Coghill's father leave to represent his son because the trial court did not so rule. As Coghill concedes, the court denied his motion for his father to appear *pro hac vice* without prejudice because the motion failed to comply with the procedural requirements set forth in former Rule 33(d), Ariz. R. Sup. Ct. In addition, the court made its ruling seventeen months before the trial eventually commenced. During the intervening time, Coghill made no further effort to clarify the trial court's specific grounds for denying his initial motion, and he made no additional efforts to secure his father as his attorney of record. Thus, the trial court did not prevent Coghill from being represented by his father. Instead, it merely ruled that Coghill had initially failed to make a procedurally appropriate request.

¶42　　　　　To the extent Coghill implicitly argues the court abused its discretion in finding his motion to admit his father *pro hac vice* failed to comply with former Rule 33, we reject that contention. That rule, now modified and found in Rule 38, Ariz. R. Sup. Ct., *see* 210 Ariz. LXX-LXXI, CXVI-VII, required an attorney moving for admission *pro hac vice* to attach to the motion a document generated by the State Bar of Arizona entitled "Notice of Receipt of Complete Application." *See* Ariz. R. Sup. Ct. 38(a)(3)(B). To secure that notice, Coghill's father was required to submit to the state bar a verified application including, *inter alia*, a certificate from each state in which he had been admitted to practice law, reflecting the status of his membership therein; certain disclosures regarding any disciplinary proceedings he may have faced; and a nonrefundable application fee equal to

eighty-five percent of the annual dues paid by active members of the Arizona bar. Ariz. R. Sup. Ct. 38(a)(3)(A), (B), and (a)(4). Coghill concedes that he did not attach the required notice from the state bar demonstrating his father's compliance with those requirements. Because the rules of the Arizona Supreme Court unequivocally required the state bar notice to be attached to the motion, the trial court did not err in rejecting Coghill's motion for his father's admission *pro hac vice*.

¶43 Nonetheless, Coghill contends that one provision of Rule 38, if enforced and applied to his father, would have unreasonably restricted his Sixth Amendment right to counsel of his choice. Coghill correctly observes that Rule 38 renders counsel ineligible for admission *pro hac vice* if the applicant resides in Arizona. *See* Rule 38(a)(1) ("[N]o person is eligible to appear as counsel pursuant to this rule if that person . . . is a resident of the State of Arizona."). Coghill states that his father had retired from law practice in Illinois and Missouri and was residing in Arizona. For this reason, Coghill contends Rule 38(a)(1) would have barred his father from representing him, for reasons unrelated to fairness, court efficiency, or maintaining ethical standards. *See United States v. Walters*, 309 F.3d 589, 592 (9th Cir. 2002) (right to choice of counsel may only be abridged to serve some "'compelling purpose'" related to "'fair, efficient and orderly administration of justice'"), *quoting United States v. D'Amore*, 56 F.3d 1202, 1204 (9th Cir. 1995), *overruled on other grounds by United States v. Garrett*, 179 F.3d 1143 (9th Cir. 1999); *United States v. Panzardi Alvarez*, 816 F.2d 813, 816 (1st Cir. 1987).

23

¶44　　　　But, in filing the *pro hac vice* motion, Coghill did not inform the trial court that his father resided in Arizona. We may therefore confidently conclude the court did not reject the motion for this reason. Thus, to the extent Coghill suggests the court erred in elevating this technical requirement above his right to counsel of his choice, the record does not support that contention.[11] Indeed, we have no way of knowing how the court would have ruled had Coghill squarely challenged this obstacle to his father's admission.

¶45　　　　Coghill maintains he is entitled to relief despite his failure to raise the issue below because a violation of the right to counsel of choice is structural error. *See Gonzales-Lopez*, ___ U.S. at ___, 126 S. Ct. at 2564. However, we can find no error at all in the absence of a record demonstrating that the trial court actually restricted Coghill's right to counsel on some basis unrelated to the "'fair, efficient and orderly administration of justice.'" *Walters*, 309 F.3d at 592, *quoting Panzardi Alvarez*, 816 F.2d at 816.

## COGHILL'S KNOWLEDGE OF MINORS' AGE

¶46　　　　Coghill argues that, to convict him of a dangerous crime against children, the jury was required to determine that he knew the minors appearing in the pornographic videos were under the age of fifteen. On each count, the jury determined that the children depicted in the videos were younger than fifteen, but it did not explicitly determine Coghill was aware

---

[11]Although Coghill alerted the commissioner evaluating his release conditions that his father lived in Arizona, he never mentioned that fact again in any proceeding before the trial judge until sentencing, by which time all relevant proceedings had been conducted by his retained counsel.

of that fact. Coghill maintains the Arizona legislature intended, and federal constitutional law commands, that A.R.S. § 13-604.01 include a requirement of scienter by the accused.

¶47        The Arizona Supreme Court has squarely addressed this very question. In *State v. Williams*, 175 Ariz. 98, 99, 104, 854 P.2d 131, 132, 137 (1993), the court concluded the defendant did not commit a dangerous crime against children when he caused serious injury to a fourteen-year-old boy by driving drunk, which "plac[ed] everyone around him at risk of injury" but did not target or "focus[] upon the victim." In that context, the court held § 13-604.01 requires only that "the victim . . . be the person against whom the crime is directed, not that the accused . . . know that the person is under fifteen." *Williams*, 175 Ariz. at 103, 854 P.2d at 136.

> Because a "dangerous crime against children" is defined as one "committed against a minor under fifteen years of age," the defendant's conduct must be focused on, directed against, aimed at, or target a victim under the age of fifteen. We do not hold that the statute applies only when the accused targets a victim whom the accused knows is under the age of fifteen. On the contrary, we approve of an earlier holding of the court of appeals that knowledge of the victim's age is unnecessary under the statute. When an individual targets a person, he or she generally assumes the risk that the victim will turn out to be within a protected age group.

*Id.* (citation omitted). The court has recently ratified its holding in *Williams*. *State v. Sepahi*, 206 Ariz. 321, ¶ 17, 78 P.3d 732, 735 (2003).

¶48        Coghill attempts to distinguish *Williams* and *Sepahi* on the ground that those cases involved aggravated assault rather than child pornography. But Arizona courts have

applied the *Williams* analysis when a defendant faces an enhanced sentence for any enumerated crime under § 13-604.01. *See, e.g., State v. Miranda-Cabrera*, 209 Ariz. 220, ¶¶ 13, 22-24, 99 P.3d 35, 38, 40-41 (App. 2004) (applying *Williams* analysis to defendant charged with second-degree murder, alleged as dangerous crime against children); *State v. Carlisle*, 198 Ariz. 203, ¶¶ 16-18, 8 P.3d 391, 395-96 (App. 2000) (applying *Williams* to charge of sexual conduct with minor under age of fifteen). Thus, our jurisprudence does not support Coghill's efforts to distinguish *Williams*.

¶49 Coghill was charged with sexual exploitation of a minor, one of the enumerated crimes under the dangerous crimes against children statute. *See* § 13-604.01(M)(1)(g). When the jury determined that Coghill knowingly possessed child pornography and that the children shown engaging in sexual conduct were under the age of fifteen, it implicitly found that his conduct focused on the children as they were portrayed. He "assume[d] the risk that the victim[s] w[ould] turn out to be within a protected age group." *Williams*, 175 Ariz. at 103, 854 P.2d at 136. Accordingly, contrary to Coghill's contention, the state need not present evidence that a defendant knew that a victim was under the age of fifteen to warrant an enhanced sentence under § 13-604.01(D).

## DISCLOSURE OF HARD DRIVES

¶50 Finally, Coghill maintains the state violated the Arizona Rules of Criminal Procedure when it failed to produce the original two internal hard drives from Coghill's computer. Coghill filed a motion requesting disclosure of his hard drives, following which

the trial court ordered the state to disclose "either a *hard copy and/or disk format* of materials listed in the indictment as it is necessary in the preparation of the Defendant's case." (Emphasis added.) Coghill did not raise this issue below.

¶51 When a defendant fails to object at trial, we review for fundamental error. *State v. Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d 601, 607 (2005). The defendant has the burden of proving fundamental error by showing the case involves "error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial." *State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984). Once the defendant establishes fundamental error, he must then demonstrate that the error caused him prejudice. *Henderson*, 210 Ariz. 561, ¶ 20, 115 P.3d at 607. Establishing prejudice "involves a fact-intensive inquiry" and thus is case specific. *Henderson*, 210 Ariz. 561, ¶ 26, 115 P.3d at 608.

¶52 Unless the trial court orders otherwise, Rule 15.1, Ariz. R. Crim. P., directs the state to "make available to the defendant for examination, testing and reproduction" any "tangible objects that the prosecutor intends to use at trial or which were obtained from or purportedly belong to the defendant." Ariz. R. Crim. P. 15.1(b)(5) and (e)(1). Because the rule gives a trial court discretion in ordering disclosure of evidence, Coghill has not shown, nor can we find, that the trial court abused that discretion in ordering copies of the hard drives be made available to Coghill.

¶53 Even if Coghill were able to show fundamental error, he has not demonstrated that any such error caused him prejudice. He asserts prejudice based on the fact that "his expert was unable to determine whether there had been any changes made in the content of the drives." Coghill's theory of defense, however, was not that evidence had been tampered with, but that it was his housemate, Franks, who had possessed the child pornography. Unless Franks had access to the computer after it was seized, Coghill has not shown he was denied a fair trial by the trial court's ruling.

¶54 For the foregoing reasons, we reverse Coghill's convictions and remand the case to the trial court for a new trial.

_____
PETER J. ECKERSTROM, Presiding Judge

CONCURRING:


_____
PHILIP G. ESPINOSA, Judge


_____
GARYE L. VÁSQUEZ, Judge