NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

FRED ALLEN YOUNG, *Appellant.*

No. 1 CA-CR 13-0429

FILED 12-02-2014

---

Appeal from the Superior Court in Mohave County
No. S8015CR201000360
The Honorable Derek Carlisle, Judge *Pro Tempore*

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Andrew Reilly
*Counsel for Appellee*

Mohave County Legal Advocate's Office, Kingman
By Jill L. Evans
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Andrew W. Gould delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Samuel A. Thumma joined.

---

**GOULD, Judge:**

**¶1**         Fred Allen Young appeals his convictions and sentences on several counts arising from his molestation and sexual abuse of an 11-year-old girl, and his videotaping her unclothed. For the reasons that follow, we find no reversible error and affirm.

**¶2**         A grand jury indicted Young in 2010 on two counts of sexual conduct with a minor under the age of 15, two counts of sexual abuse of a minor under the age of 15, and one count each of sexual exploitation of a minor, voyeurism, and surreptitious videotaping. Young's wife testified that when she returned home from visiting a relative, Young made a reference to the fact he had important images on his video camera. After she heard this comment, Young's wife decided to examine the videos. She then discovered videos of her 11-year-old daughter from a previous relationship taking a shower and taking a bath. She turned the memory card over to police. Additionally, the victim testified that while her mother was away, Young had massaged her breasts and put his finger inside her vagina, once in his bedroom and once in her bedroom.

**¶3**         The jury convicted Young of two counts of molestation as lesser-included offenses of the charges of sexual conduct with a minor, and the remaining offenses as charged. The court sentenced Young to a total of 34 years in prison. Young's counsel filed a timely notice of appeal, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") §§ 12-120.21(A)(1), 13-4031, and 13-4033(A).

**¶4**         On appeal, Young argues that the court abused its discretion in finding him competent to stand trial, in finding that the waiver of his *Miranda* rights and confession was voluntary, and in allowing testimony about pornography found in his bedroom. We address each issue in turn.

I.      **Competency Factual and Procedural Background**

A.      **Initial Competency Finding**

**¶5**          Four months after the indictment was filed, defense counsel moved for a Rule 11 screening examination of Young, based on counsel's concerns that he "lacks sufficient intelligence and memory to understand the nature of the proceedings or to effectively assist in his defense." The court granted the motion and appointed Dr. Mark Harvancik to conduct the screening examination. Dr. Harvancik determined that Young had a cognitive impairment consistent with "a diagnosis of Borderline Intellectual Functioning" and "an IQ in the range from approximately 70 to 80." Dr. Harvancik concluded, however, that allowing for education and minor modifications to court proceedings, Young was competent to stand trial. The court denied defense counsel's oral motion for a full Rule 11 evaluation.

B.      **Finding of Incompetency**

**¶6**          Four months later, defense counsel filed a motion for Rule 11 evaluation based on a psychiatric examination performed by Dr. Richard Lanyon. Although this report is not in the record on appeal, Dr. Lanyon apparently placed Young's full-scale IQ at 59. The court granted the motion, and appointed Dr. Harvancik and Dr. Christopher Linskey to perform full Rule 11 examinations. This time, Dr. Harvancik concluded that Young had a mild "intellectual disability,"[1] and because of his intellectual deficiencies, he was not competent to stand trial. Based in part on his opinion that Young seemed to be "exaggerating" his deficiencies, however, Dr. Harvancik expressed uncertainty as to whether he could be restored to competency. Dr. Linskey concluded that Young had a mild intellectual disability, and that, based on Young's "cognitive deficits" as well as "marked emotional distress," he was not competent to stand trial. Dr. Linskey opined that, although Young was "not the best candidate for restoration," he could be restored to competency. In March 2011, after reviewing the reports and hearing argument, the court determined that Young was not competent to stand trial, but could be restored to

---

[1]      Although Dr. Harvancik used different terminology, we use the term "intellectual disability" "in keeping with current Arizona law and contemporary medical and ethical standards." *State v. Naranjo*, 234 Ariz. 233, 243, ¶ 39, n.3, 321 P.3d 398, 408, n.3 (2014).

competency, and ordered restoration treatment in the Yavapai County Restoration to Competency Program.

## C.     Restoration to Competency

¶7          Six months later, Dr. Joseph Stewart, the director of the Yavapai County Restoration to Competency Program, reported that Young was now competent to stand trial.  Dr. Stewart concluded that Young would remain competent so long as he continued to receive the necessary medications and therapy to address his emotional issues.  Dr. Stewart noted, however, that there was a "high likelihood" that Young would revert to a lifelong habit of "frequent 'I don't know' responses" and tearfulness "to escape scrutiny and avoid being held responsible." Defense counsel filed a motion for a second Rule 11 evaluation based on her belief from interactions with Young that, notwithstanding Dr. Stewart's opinion, Young had not been restored to competency.  The court denied the motion for another Rule 11 evaluation.  Following an evidentiary hearing at which Dr. Stewart testified, the trial court found that Young had been restored to competency.

## D.     Second Finding of Competency

¶8          Young immediately filed a third motion for a Rule 11 examination, based on an informal opinion from Dr. Laurence Schiff, psychiatrist to the Mohave County Adult Detention Center, that Young had not been restored to competency and was not restorable.  The trial court decided to "err on the side of caution," and granted defense counsel's motion for another Rule 11 evaluation, again by Dr. Harvancik, and also by Dr. Schiff.  Dr. Harvancik concluded in this third competency evaluation that Young had a mild intellectual disability, but was exaggerating his impairment and was "marginally competent" to stand trial and aid in his defense.  Dr. Schiff also opined that Young had a mild intellectual disability, but concluded that Young's "cognitive deficits and mental [disability] are of a significant severity as to render him incompetent to stand trial," and would prevent him from being restored to competency.  Following a two-day evidentiary hearing at which both Dr. Harvancik and Dr. Schiff testified, the trial court recognized that the testimony was conflicting, and the decision close, but in light of the testimony and the court's own observations of Young, found that he was competent to stand trial.

### E.    Subsequent Competency Challenge

**¶9**        A year later, shortly before trial was set to begin, Young filed a fourth motion for a Rule 11 examination based on counsel's belief that Young "has continually demonstrated a complete inability to make any decisions regarding his case or to participate in the proceedings in a meaningful manner."   Defense counsel noted that although a tutor had worked several hours to educate Young on the charges he faced, Young still could not explain what they were.   The court denied the motion, finding that nothing had changed since the court had found that he had been restored to competency.

## II.    Rule 11 Discussion

**¶10**        We will not upset a trial court's finding of competency absent an abuse of discretion.  *State v. Moody*, 208 Ariz. 424, 444, ¶ 55, 94 P.3d 1119, 1139 (2004).   In conducting our review, we determine only "whether reasonable evidence supports the trial court's finding that the defendant was competent, considering the facts in the light most favorable to sustaining the trial court's finding."  *State v. Glassel*, 211 Ariz. 33, 44, ¶ 27, 116 P.3d 1193, 1204 (2005).

**¶11**        A defendant has a due process right not to be tried or convicted while incompetent. *Drope v. Missouri,* 420 U.S. 162, 171-72 (1975).  The test for competency is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960).  The mere existence of a mental defect, such as an intellectual disability, "is not grounds for finding a defendant incompetent to stand trial." Ariz. R. Crim. P. 11.1; *cf. Atkins v. Virginia*, 536 U.S. 304, 318 (2002) ("Mentally retarded persons frequently know the difference between right and wrong and are competent to stand trial."); *State v. Grell*, 212 Ariz. 516, 525, ¶ 38, 135 P.3d 696, 705 (2006) ("A defendant deemed to have mental retardation, however, is not shielded from trial.").   Rather, the test for competency is whether the mental defect renders a criminal defendant "unable to understand the proceedings against him or her or to assist in his or her own defense." Ariz. R. Crim. P. 11.1; *see Moody,* 208 Ariz. at 444, ¶ 56, 94 P.3d at 1139. The competency inquiry thus focuses "on an extremely narrow issue: whether whatever is afflicting the defendant has so affected his present capacity that he is unable to appreciate the nature of the proceedings or to assist his counsel in conducting his defense."  *State v. Amaya-Ruiz*, 166 Ariz. 152, 162, 800 P.2d

1260, 1270 (1990) (quoting *State v. Steelman*, 120 Ariz. 301, 315, 585 P.2d 1213, 1227 (1978).

**¶12**      Young argues that the trial court applied an incorrect legal standard in finding him incompetent but restorable in March 2011 and then competent in April 2012. In support of this argument, Young points to certain remarks made by the court during the hearings suggesting that a cognitive disability alone could never form the basis for a finding of incompetency. The court's remarks during the March 2011 hearing arguably suggest that the court incorrectly believed that Rule 11.1 required a developmental disability, brain damage, or an emotional disorder in addition to any cognitive disability before it could find a defendant incompetent**.** Rule 11.1 does not require that a mental disability result from injury, qualify as a developmental disability, or be accompanied by an emotional disorder in order to give rise to a finding of incompetency. *See* Ariz. R. Crim. P. 11.1. The rule includes both "congenital mental conditions" and "conditions resulting from injury or disease and developmental disabilities as defined in A.R.S. § 36-551" as among those mental illnesses, defects, or disabilities that can give rise to an inability to understand the proceedings or to assist in one's own defense. *See id.* A cognitive disability that constitutes a congenital mental condition accordingly can form the basis for a finding of incompetency.

**¶13**      To the extent the trial court may have applied an incorrect legal standard at the March 2011 hearing, in the end it concluded based on sufficient evidence that Young was incompetent, and ordered restoration treatment, which it ultimately found was successful based on the report and testimony from the director of the restoration services program, Dr. Stewart. The cited remarks at the April 2012 hearing, at which the court again concluded that Young was competent, could be reasonably construed as a comment that the mere existence of Young's intellectual disability did not necessarily render him incompetent to stand trial, a correct statement of the law. *See* Ariz. R. Crim. P. 11.1; *cf. Atkins,* 536 U.S. at 318; *Grell*, 212 Ariz. at 525, ¶ 38, 135 P.3d at 705. Under these circumstances, the trial court's comments at the March 2011 and April 2012 hearings do not constitute grounds for reversal.

**¶14**      Young also argues that the court gave insufficient weight to counsel's view of Young's disability, and that insufficient evidence supported its findings that Young could be restored to competency, that he had been restored to competency, and that he was competent, notwithstanding Dr. Schiff's opinion to the contrary. In making its finding that Young could be restored to competency, however, the court

relied on Dr. Linskey's opinion to that effect. This was sufficient reasonable evidence to support the finding. *Glassel*, 211 Ariz. at 44, ¶ 27, 116 P.3d at 1204.

¶15 The court's finding that Young had been restored to competency after six months of restoration treatment was also sufficiently supported by the report and testimony of the director of the restoration program, Dr. Stewart. We are not persuaded by Young's claim that Dr. Stewart's testimony was undermined by his "reliance on an inflated IQ score, and his admission that it was unlikely that [Young] would be able to reason." Whatever Young's IQ, it appeared that all of the doctors who evaluated him agree that he had at most a mild intellectual disability. Moreover, Dr. Stewart never testified Young was unable to reason, but that Young had a "limited ability to reason," meaning only that he could not engage in "sophisticated reasoning." Dr. Stewart testified that Young could understand concepts explained "in detail, in a black and white format of action and reaction, or action and consequence," sufficient to go to trial.

¶16 Dr. Stewart also testified at length on the ways in which Young had expressed an understanding of the proceedings, his legal rights, and the role that the judge, the prosecutor, and his attorney had in those proceedings. Dr. Stewart opined that Young could discuss the charges against him and the circumstances surrounding his charges. Dr. Stewart found it significant that during one counseling session, Young volunteered a defense strategy – that someone else living in the house could have taken the pictures, because the camera was available to anyone. The testimony of Dr. Stewart and his report detailing his findings constituted sufficient reasonable evidence to support the court's finding that Young had been restored to competency, and accordingly the court did not abuse its discretion in so finding.

¶17 Finally, sufficient evidence in the form of the trial court's own observations as well as the testimony from Dr. Harvancik and Dr. Stewart supported the court's finding in April 2012 that Young was competent. *State v. Bishop*, 162 Ariz. 103, 105, 107, 781 P.2d 581, 583, 585 (1989) (holding that a trial court decides the credibility and weight to be given expert testimony, and may consider its own observations of a defendant in determining competency). The court recognized that Dr. Schiff disagreed, but noted that the opinions of Dr. Stewart and Dr. Havancik that Young was competent, along with their opinion that Young "was embellishing his degree of impairment," led it to conclude that Young was competent to stand trial. The court acknowledged that

defense counsel had consistently taken the position that Young was unable to assist her, but indicated that the court had also observed "odd" behavior, in which Young stopped smiling and started crying when he noticed the judge was looking at him. This record contains sufficient reasonable evidence for the court to conclude that Young was competent, and accordingly we find no error.

## III. Admission of Videotaped Interrogation

¶18 Young also argues that the court abused its discretion in denying his motion to suppress the videotaped interrogation, because the interrogating officers failed to accommodate his low intelligence, rendering his waiver of his *Miranda* rights invalid, and knowingly exploited his low intelligence, rendering his statements involuntary. The court reviewed the videotapes of the interrogation, heard testimony from the detective who conducted the first interview and observed its continuation by another detective, and heard argument before denying the motion.

¶19 The court found that Young expressed his understanding of his *Miranda* rights before waiving them, appeared to understand and give appropriate answers to the questions that were asked of him, indicated he had a good memory, and "pretty much denies any criminal conduct" during questioning by the first detective. The court found that the second detective, who stepped in and interrogated defendant for only about 20 minutes, was "more aggressive or assertive," but she did not threaten the defendant or make any promises before obtaining his admission that he had videotaped the victim in the bathtub and shower, and may have accidentally touched her buttocks and near her crotch. Finally, the court found that, under the totality of the circumstances, defendant's will was not overborne, because even after making these admissions, he adamantly insisted that he was not going to admit to what he did not do, and he did not touch the victim's breasts.

¶20 The inquiry into an alleged violation of *Miranda* is distinct from the inquiry into voluntariness of the statement. *State v. Montes*, 136 Ariz. 491, 494, 667 P.2d 191, 194 (1983). We review the trial court's ruling admitting a defendant's statements for abuse of discretion, viewing the evidence presented at the suppression hearing in the light most favorable to upholding the trial court's ruling. *State v. Ellison*, 213 Ariz. 116, 126, ¶ 25, 140 P.3d 899, 909 (2006).

### A.  *Miranda* **Waiver**

**¶21**         Only if the waiver of *Miranda* rights is made knowingly and intelligently will the subsequent confession be admissible.  *Miranda v. Arizona*,  384 U.S. 436, 478-79 (1966).  The prosecution bears the burden of proving by a preponderance of the evidence that a defendant knowingly and intelligently waived his *Miranda* rights.  *See Colorado v. Connelly*, 479 U.S. 157, 168 (1986).  To satisfy this burden, the prosecution must introduce sufficient evidence to establish that under the "totality of the circumstances," the defendant was aware of "the nature of the right being abandoned and the consequences of the decision to abandon it."  *Moran v. Burbine,* 475 U.S. 412, 421 (1986).

**¶22**         We find no abuse of discretion in the court's finding that Young's waiver of his *Miranda* rights was made knowingly and intelligently.  Although a low IQ may result in a finding that a *Miranda* waiver was invalid,  *see United States v. Garibay*, 143 F.3d 534, 539 (9th Cir. 1998), we conclude that the court  did not abuse its discretion in denying the motion to suppress on this basis.  The officer who obtained the *Miranda* waiver and interrogated him for about a half-hour testified that Young did not behave like he was mentally challenged.  Upon reviewing the videotape of Young's interrogation, the trial court noted that Young nodded several times while the officer advised him of his rights under *Miranda*, indicating he understood, and responded to the officer's inquiry as to whether he did understand these rights by saying, "I'm pretty sure I do."  The officer followed up by saying, "If you have any questions let me know."  The trial court also found that Young never expressed any uncertainty about responding to questions, or asked any follow-up questions.  Additionally, the trial court determined that nothing in Young's demeanor or his responses during the videotaped interrogation indicated that he was of such low intelligence that he could not understand his rights and waive them, or that he did not want to talk to the officer.

### B.  **Voluntariness**

**¶23**         A defendant's statement also must be voluntary, "not obtained by coercion or improper inducement."  *Ellison*, 213 Ariz. at 127, ¶ 30, 140 P.3d at 910.  The prosecution also has the burden of proving that a statement was voluntary by a preponderance of the evidence. *Amaya-Ruiz*, 166 Ariz. at 164, 800 P.2d at 1272.  In evaluating voluntariness, the court must "look to the totality of the circumstances surrounding the confession and decide whether the will of the defendant has been

overborne." *State v. Lopez*, 174 Ariz. 131, 137, 847 P.2d 1078, 1084 (1992). We will not find a statement involuntary unless there exists "both coercive police behavior and a causal relation between the coercive behavior and the defendant's overborne will." *State v. Boggs*, 218 Ariz. 325, 336, ¶ 44, 185 P.3d 111, 122 (2008).

**¶24** We find no abuse of discretion in the court's finding that Young's statements were voluntary, notwithstanding Young's claim that because of his low IQ, the standard police interrogation techniques overbore his will. Limited intelligence is not, by itself, sufficient to render a confession involuntary. *State v. Jimenez*, 165 Ariz. 444, 449, 799 P.2d 785, 790 (1990). A defendant's low intellectual functioning factors into a voluntariness determination if the interrogating detective knew or should have known of it because of objective manifestations. *State v. Blakely*, 204 Ariz. 429, 437, ¶ 31, 65 P.3d 77, 85 (2003); *State v. Carillo*, 156 Ariz. 125, 137, 750 P.2d 883, 895 (1988). The critical question is whether the police have exploited a defendant's low intelligence through intimidation or coercion such that it overcomes the defendant's will and induces an involuntary confession. *Carillo*, 156 Ariz. at 137, 750 P.2d at 895; *see Connelly*, 479 U.S. at 157. In addition, a court must examine the reliability of a defendant's statements, determining whether, based on low intelligence, a defendant is able to understand the meaning of his statements to the police. *State v. Clabourne*, 142 Ariz. 335, 342, 690 P.2d 54, 61 (1984).

**¶25** The trial court's finding that neither of the detectives threatened Young or made any promises was supported by the record. The court's further finding that Young's will was not overborne, as evidenced by his vehement refusal at the end of the second portion of the interrogation to admit to touching the victim's breasts, is also supported by the record. Although Young stated at the end of the first portion of the interrogation, "I'm guilty, you know, ok, screw it," it did not appear that he made this statement because his will was overborne – it appeared, rather, that he was speaking facetiously, as evidenced by his resumption of denials of wrongdoing at the start of the second portion of the interrogation. Moreover, at the end of the second portion of the interrogation, Young repeatedly insisted, "I'm not going to admit these things I didn't do, ma'am." Under these circumstances, we conclude that the court did not abuse its discretion in finding Young's statement voluntary.

IV.     **Pornographic Titles Showing Interest in Minors**

**¶26**          Young also argues that the trial court abused its discretion in allowing a police detective to testify that he found pornographic magazines with titles suggesting sexual interest in young, teenage females.  Over the defendant's objection, the trial court allowed testimony that Young possessed adult pornography with titles suggesting that he had a motive or the intent to commit sexual conduct with a minor, sexual abuse, or surreptitious videotaping.  The State subsequently elicited testimony that Young possessed legal pornography depicting teenagers in ponytails and pigtails, some of them wearing school uniforms, with the following titles: 1) "Barely Legal," 2) "Newcomers," 3) "Teaser," 4) "Just 18," 5) "World's Hottest Teen Sex," and 6) "18."  The trial court instructed the jury that evidence of other acts could be considered only to establish the defendant's motive, opportunity, intent or identity.  We review rulings on the admissibility of other-acts evidence for abuse of discretion. *State v. Mott,* 187 Ariz. 536, 545, 931 P.2d 1046, 1054 (1997).

**¶27**          We find no such abuse of discretion.  A trial court has discretion to admit other-acts evidence if it is offered  for a proper purpose under Rule 404(b), its relevance under Rule 402 is not substantially outweighed by potential for unfair prejudice under Rule 403, and the court provides a limiting instruction if requested under Rule 105.   *Mott*, 187 Ariz. at 545, 931 P.2d at 1054.  Evidence of other acts is not admissible to prove character "to show action in conformity therewith," but it may be admissible for other purposes, such as proof of intent, motive, opportunity, or identity.  *See* Ariz. R. Evid. 404(b).  Here, the evidence was relevant to prove Young's intent and motive.  The pornography was probative on Young's sexual interest in younger females, supplying a motive to film the victim as she bathed.  Ariz. R. Evid. 401.  In addition, the evidence tended to show that Young intentionally, and not accidentally as he claimed during his interrogation, touched the victim's vagina, buttocks, and breasts.  *See id*.

**¶28**          Nor can we say that the court abused its discretion in finding that the probative value of this evidence was not substantially outweighed by unfair prejudice.  *See* Ariz. R. Evid. 403; *State v. Connor*, 215 Ariz. 553, 564, ¶ 39, 161 P.3d 596, 607 (App. 2007) ("Evidence is unfairly prejudicial only when it has an undue tendency to suggest a decision on an improper basis such as emotion, sympathy, or horror.") (citation omitted).  The trial court was careful to avoid any undue prejudice by not permitting the State to show any of the images to the jury, and limiting the presentation of the evidence to the name and content of a few magazines.  In addition, the

court gave an appropriate limiting instruction to the jury, mitigating any potential for unfair prejudice.  On this record, the court did not abuse its discretion in admitting this evidence over Young's objection.

¶29        Young cites *State v. Coghill*, 216 Ariz. 578, 169 P.3d 942 (App. 2007), for the proposition that it was reversible error for the trial court to admit evidence that he possessed adult pornography because his case involves a child victim.   In *Coghill*, the defendant was charged with possessing child pornography.  216 Ariz. at 582, ¶ 11, 169 P.3d at 946.  In an effort to show that the defendant had the opportunity and ability to download the subject child pornography from the internet, the State sought to introduce evidence showing the defendant had downloaded a significant amount of adult pornography to his computer.   *Id.* at 583 ¶¶ 16-17, 169 P. 3d at 947.  *Coghill* held that trial court erred in admitting the specific adult pornographic evidence in defendant's possession, rather than restricting the evidence to defendant's general ability to download and copy computer files.  *Id.* at 584-85, ¶¶ 23, 27, 169 P. 3d at 948-49.  In reaching this decision, *Coghill* stressed the importance of a trial court's role in examining the "nature and content" of other act evidence, and "in removing unnecessary inflammatory detail from other-act evidence before admitting it." *Id.* at 583 ¶¶ 16-17, 18, 169 P. 3d at 947.

¶30        *Coghill* is distinguishable from this case.  In the present case, Young claimed during his interrogation that he did not touch the victim with any sexual intent; any touching of her private areas was merely accidental.  To rebut this defense, the State introduced the name and content of pornographic magazines suggesting that Young was sexually interested in young, teenage girls.  Additionally, the State did not show any images to the jury in this case, which, coupled with the court's limiting instruction, was enough to prevent any undue prejudice to Young.  Thus, the court did not abuse its discretion in admitting this evidence over Young's objection.

## V.    **Conclusion**

**¶31**        For the foregoing reasons, we affirm Young's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: gsh